[Civ. No. 28203.   Second Dist., Div. Three.   Feb. 3, 1966.]

BERNARD POTTER, SR., Plaintiff and Appellant, v. JOHN MORAN, as Trustee, etc., et al., Defendants and Respondents.

Irl Davis Brett and Frank Wickhem for Plaintiff and Appellant.

George L. Catlin, in pro. per., Betts & Loomis, James A. Williams and John Joseph Hall for Defendants and Respondents.

SHINN, P. J.—This action instituted by Bernard Potter, Sr., seeks judgment removing defendant John Moran as trustee of two testamentary trusts, annulment of orders approving certain accounts of the trustee which awarded fees to the trustee and his attorneys, and ordering the restoration of the same to the trusts. At the conclusion of plaintiff's evidence findings and judgment were in favor of defendants, and plaintiff appeals.

The attack upon the orders sought to be annulled is grounded upon charges of extrinsic fraud upon the court that approved the accounts, and the basis of the other relief sought is essentially alleged breach of fiduciary duties of the trustee and his attorneys.

There were two major issues in the trial court, namely, whether there was extrinsic fraud in procuring approval of the accounts and, if so, whether the trusts suffered detriment for which redress should be granted. We address our attention to the fraud issue.

We have reached the conclusion that the failure of the court to render judgment annulling the orders approving the accounts in question was in error and that the judgment must be reversed.

There are two trusts under administration; one created by the will of Bernard Potter, Jr., naming his children, Bernadette Ann, aged 12, and Stephen, aged 11, as life beneficiaries and Bernard Potter, Sr., as residuary beneficiary, and the

other created by the will of Gertrude Ann Green, the former wife of plaintiff, which named the same beneficiaries. Plaintiff was the first trustee under both trusts; upon his resignation in 1957, John Moran was appointed trustee and continued to serve as such. At the times of the rendition and approval of the accounts in question Frank D. Catlin and George L. Catlin were Moran's attorneys and caused the accounts to be prepared and approved by the court; Title Insurance & Trust Company was guardian of the estates of the minors and the Catlins were also attorneys for the guardian.

Moran filed accounts in each trust in 1958 and 1959. The Catlins were his attorneys in all these accountings. The only objections to any of these accounts were those filed by plaintiff to the second account in the Potter trust. Basically the charges of extrinsic fraud upon the court consisted of allegations that the trustee and his attorneys concealed from the court the fact that the attorneys were representing both the trustee and the guardian of the estates of the minors. It was also charged that certain other material facts were concealed from the court in the separate hearings of the accounts.

Originally the assets of the Green trust were valued, in round figures, at $94,000, and were revalued by Moran at $100,000; the assets of the Potter trust were valued at about $64,000.

In the trial of the present action plaintiff introduced evidence of the oral proceedings in the hearings upon two of the accounts. It appeared therefrom that in neither hearing was the court informed that Catlin and Catlin were attorneys for both the trustee and the guardian. Also, Mr. George L. Catlin testified that in none of the hearings was the court given that information. It also appeared that in settling an account in one trust the court was not advised that the trustee and his attorneys had been compensated by fees received from the other trust during the same accounting period.

Under plaintiff's theory that in the hearings there was concealment of material facts which would have been disclosed in full and fair hearings, evidence was received of the amounts that had been allowed the trustee and his attorneys in the two trusts.

It was alleged in the complaint and not disputed in the trial that in the Green trust the total amounts requested and allowed for two yearly accounting periods were $2,900 for the trustee and $1,100 for the attorneys; for services in the Potter estate, in the same periods, the trustee was allowed a total

of $2,100 and the attorneys $700, making a total in the two trusts of $5,000 for the trustee and $1,800 for the attorneys. In the present trial George Catlin testified that the "probate fee" of trustees is three-fifths of one percent of the value of assets; if the amount requested does not exceed that percentage it is approved by the commissioners and if the request is for a greater amount it goes to the judge for his decision. He also testified that he informed Mr. Seaborne, of the title company, as to the first Green account that the request for $1,700 trustee's fees would have to be passed upon by the court.

If there was fraud practiced upon the court it consisted of the suppression of facts which the trustee and his attorneys were bound to disclose (Civ. Code, § 1710). That they had a duty to inform the court that the attorneys were representing the guardian as well as the trustee is not open to doubt. The fact that the guardian had not filed objections to the request for fees of the trustee and his attorneys would have indicated to the court, quite persuasively, that the guardian was aware of the amounts requested, was informed of the services rendered and considered the demands reasonable. And it was a reasonable assumption that in deciding not to object to the demands for fees the guardian was acting under independent legal advice. Little did the court know that the attorneys for the guardian were those who could not give it impartial and fair advice. Mr. Catlin showed the accounts to Mr. Seaborne of the title company, which was a tacit representation to the guardian, by its own attorney, that the amounts requested were reasonable. Had all the facts we have mentioned been known to the court the apparent approval of the accounts by the guardian, evidenced by its failure to file objections, would have been without significance.

There was a substantial portfolio of stocks in each trust. The transactions engaged in by the trustee, so far as shown, were sales and purchases of stocks. The trustee, a retired sheriff's officer, was somewhat of an analyst of security values, and he testified that before making a sale or purchase he made careful studies of the companies involved. Since the study of investments was the most important service performed and was in the interests of both trusts, it is questionable whether the court would have allowed the trustee $1,700 in the Green trust in December 1959 if it had known that in September 1959 he had been allowed a fee of $1,000 for services in the Potter trust. It appears from the transcript of the hearing on the second Potter account that the judge

was sharply critical of the charges of the trustee and the attorneys in that account. He stated that a customary charge would be three-fourths of one percent of assets. When mention was made that there was a Green trust of which Moran was the trustee, and two guardianships, the court said: ''I don't like that sort of a situation. There are too many people in this and not enough of it going to the beneficiaries'' etc. And he called attention to the fact that the requests for fees of $1,450 amounted to nearly half the annual income.

It is imperative that in matters in probate, and especially so in matters heard ex parte, that the court be fully informed as to all facts that might influence the decision to be made. There is an affirmative duty to furnish such information, and the court will properly assume that nothing material to the matter in hand has been concealed.

The court acted without a full and proper understanding of the facts when it fixed the compensation for services for one trust without knowing what had been collected in fees from the other.

Shortly before the hearing of the second account in the Potter trust, plaintiff, as residuary beneficiary, mailed to George L. Catlin his objections to the account with a request that they be presented to the court. No doubt Mr. Potter believed he was sending the objections to Mr. Catlin in his capacity of attorney for the guardian, but it appears they were accepted by Mr. Catlin as attorney for the trustee. The Catlin brief says that Mr. Potter knew that Mr. Catlin, being one of the attorneys for the trustee, could not represent him. The objections were filed and were called to the attention of the court by Mr. Catlin, with the perfunctory statement that Mr. Potter could not be present, but that he wished to have the objections considered by the court. The objections are not contained in the record and it is not contended that they furnished information to the court that the attorneys represented the trustee and also the guardian.

Numerous arguments advanced by defendants fail to distinguish between the basis of the plea for annulment of the orders and the charges of breach of fiduciary duties which relate only to questions that would arise if the orders were annulled and there was a reconsideration of the accounts.

Defendants contend the dual representation was proper because it was known to both plaintiff and the guardian, and neither objected to it; they say that plaintiff, especially, had no ground for complaint because he was responsible for the

employment of the attorneys to represent the trustee and also the guardian; the Catlins say there was no conflict of interest because all the charges made for services were reasonable, and that if there had been a conflict of interest they were prepared to terminate their representation; Moran says there was no want of independent representation since the guardian knew what amounts were being requested and decided they were fair, and not subject to objection. The Catlin brief asserts that the only one who could have complained was the guardian and ''Whether the minor beneficiaries may reopen said accounts is beyond the scope af appellant's action.'' Not a word is said about the failure to inform the court of the dual representation. The position of defendants is that it was of no concern to the court that the attorneys were pressing their own claims and those of the trustee against the guardianship estate which would have to pay the bills.

These assertions of knowledge and consent on the part of plaintiff and the guardian and the reasonableness of the requests for compensation amount only to a contention that even if objections to the accounts had been filed by all or on behalf of all the beneficiaries, and had been tried on the merits, the objectors could not have prevailed. The contention is beside the question whether any beneficiary was prevented from contesting the accounts and was deprived of a fair hearing thereon by reason of the concealment from the court of material facts by the trustee and the attorneys.

If the court had known that the Catlins represented the guardian it would have realized that in failing to file objections the guardian was acting under the influence of its attorneys and could not give the guardianship estate proper legal representation. This would not have been an erroneous conclusion. That the guardian in failing to file objections to the accounts in question was acting under the influence of the attorneys is inferable from later proceedings in the trusts. The trustee filed his third and fourth accounts, the Catlins were relieved as attorneys for the guardian, other counsel was appointed, the guardian filed objections, and in each instance the fees allowed by the court were substantially less than the amounts requested.

All the arguments of defendants are to the effect that they were not guilty of any breach of duty toward the beneficiaries. They avoid the question whether they withheld from the court information which it was their duty to disclose.

We have reached certain conclusions: if the court had known that the attorneys were representing the guardian it

would not have approved any of the four accounts without a hearing in which the guardian was represented by independent counsel. The court would have informed the trustee and his attorneys that no valid order could be made while the attorneys represented the conflicting interests.

Where a trustee, who is also guardian of a minor, obtains court orders which adversely affect the interests of the minor as a beneficiary, and the minor has no representation other than that of the trustee, the orders are invalid and may be vacated by the court. (*Estate of Charters*, 46 Cal.2d 227 [293 P.2d 778].) The rule would be applicable to all the accounts of Moran which were approved while he and the guardian were represented by the Catlins. The minors were entitled to independent and effective legal representation and this they did not have, and could not have while their guardian was acting under the advice of the Catlins.

Although the argument is irrelevant to the fraud issue, we have considered and find no merit in the contention that plaintiff could not complain because he knew the Catlins represented conflicting interests. The elderly lawyer (the public records show he was admitted to the California Bar in 1894) was ill at the time. Perhaps he thought the Catlins would present and urge his objections, or that the guardian would object to the accounts. But he, as well as any other beneficiary, was prejudiced if the trusts suffered any detriment; and he had no reason to believe that any material facts would be withheld from the court in the hearing. Neither did the guardian have reason to believe that the Catlins would fail to inform the court that they were acting as its attorneys.

The error of the court in failing to vacate the orders and proceed with a reexamination of the accounts and determination of the fitness of Moran to continue as trustee requires a reversal of the judgment.

The complaint sought annulment of the orders and a consideration of the accounts de novo. The findings determined the first issue but not the second. The court found that neither Moran, Frank D. Catlin nor George L. Catlin was guilty of any misconduct, dishonesty or fraud and that they acted in complete and proper accord with their duties. There was no finding whether the amounts of the fees that had been allowed were the reasonable value of the services nor whether the trustee had been negligent in the sale of certain stocks, as alleged in the complaint. When Mr. Potter was being ques-

tioned as to the necessity and advisability of the sale of AT&T stock which Moran had made from one of the trusts, the court interrupted, saying "But these accounts have been approved by the Court. The Probate Court has approved them, and I am not going to go all over them again." It is clear that the court did not consider the accounts de novo. The accounts are not a part of the record, and since the court made no finding with respect to the reasonable value of the services of the trustee and the attorneys, these remain for determination by the trial court.

Plaintiff was a proper party and the present action was a proper one by which to seek annulment of the orders. ██ "A court has inherent power to set aside a decree for extrinsic fraud (*Cross* v. *Tustin,* 37 Cal.2d 821, 825, [236 P.2d 142]) when a party has been prevented from fully presenting his case and there has therefore been no adversary trial of the issue. (*Bacon* v. *Bacon,* 150 Cal.477, 491 [89 P. 317]; *Howard* v. *Howard,* 27 Cal.2d 319, 321 [163 P.2d 439].) ██ 'The public policy underlying the principle of res judicata that there must be an end to litigation requires that the issues involved in a case be set at rest by a final judgment. . . . This policy must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which fully to present his case.' (*Jorgensen* v. *Jorgensen,* 32 Cal.2d 13, 18 [193 P.2d 728].)" (*Estate of Charters, supra,* 46 Cal.2d 227, 234-235.)

The enedavor of the attorneys to defend their actions throughout this litigation is no doubt due to the insistence of their client, Moran. Two judges suggested it would be advisable for him to resign as trustee, but he declined, declaring he has a moral obligation to protect the interests of the minors, children of his dear friend, Bernard Potter, Jr.

By its judgment the court declined to remove Moran, as trustee, but since the court's conclusion that he was fit to serve as trustee was inseparable from the holding that the accounts could not be reexamined, the demand that he be removed creates an issue that must be determined, and as to that issue also the judgment must be reversed.

The judgment is reversed for further proceedings in accordance with the views herein expressed.

Ford, J., and Kaus, J., concurred.

The petitions for a rehearing were denied March 3, 1966, and respondents' petitions for a hearing by the Supreme Court were denied March 30, 1966.