[Civ. No. 44659. First Dist., Div. Three. Dec. 3, 1979.]

PATRICIA D. MORALES, Plaintiff and Appellant, v.
FIELD, DeGOFF, HUPPERT & MacGOWAN, Defendants
and Respondents.

308

COUNSEL

Fleischmann & Farber, Hartly Fleischmann and Jay Richard Strauss for Plaintiff and Appellant.

Wilson, Elser, Edelman & Dicker, Kroll, Edelman, Elser & Wilson, Ralph W. Robinson and Elliott M. Kroll for Defendants and Respondents.

OPINION

SCOTT, J.—Patricia Morales appeals from a judgment of dismissal of her complaint following the sustaining of respondents' demurrers without leave to amend, and from the granting of respondents' motion for judgment on the pleadings. Appellant's complaint alleges damages resulting from a breach of duty owing to her by respondent law firm, Field, DeGoff, Huppert & MacGowan.

Appellant Patricia Morales is the adult daughter of Beatrice S. Dennis, who died in September 1969, and Gordon W. Dennis, who died in 1975. This lawsuit involves events which occurred during the probate of Beatrice's estate. When Beatrice died, she left a will which bequeathed her community property to her husband, Gordon, and her separate property to a testamentary trust of which Gordon was life beneficiary and Patricia the remainderman. Wells Fargo Bank was named executor and trustee. To represent it in that capacity, Wells Fargo retained respondents Field, DeGoff, Huppert & MacGowan, who had been the Dennis family's attorneys for many years and who drafted Beatrice's will. After Beatrice's death, respondents sent appellant a letter on October 9, 1969, which stated: "There is no action required to be taken on your part in connection with the hearing or further probate proceed-

ings." Respondents sent a second letter on October 15, 1969, which stated: "...we will keep you advised if anything unusual arises during the probate administration. [¶] Since all aspects of probate administration will be under court supervision and subject to court orders, you should feel reasonably assured that your interests will be protected."

Appellant's allegations that respondent attorneys for the trustee breached a duty owing to her as a beneficiary of her mother's estate flow from two transactions which will be discussed separately.

### The Hibil Transaction

In March of 1969, shortly before her death, Beatrice guaranteed certain unsecured personal loans of approximately $335,000, made jointly and severally to three shareholders of Hibil, Inc. by the Chartered Bank of London. Gordon was one of those three shareholders; the money was borrowed to provide initial financing for the operation of Hibil. On November 25, 1970, Wells Fargo as executor filed a "Petition for Instructions Authorizing Executor to Execute Guarantee and Compromise of Claim." The petition was prepared by respondents. According to the petition, as part of a compromise and settlement of its claim against Beatrice's estate, Chartered Bank had agreed to refinance the original promissory notes guaranteed by Beatrice. Hibil, Inc. was to be the borrower, with each of Hibil's original three shareholders and Beatrice's estate coguarantors of the loan. Wells Fargo as executor sought authorization to execute a guarantee of that loan; the trial court authorized and approved Wells Fargo's request on December 10, 1970.

Appellant alleges that respondents breached a duty owed to her when they prepared Wells Fargo's petition for permission to execute the Hibil loan guarantee without notifying her of the proposed transaction, and without disclosing to her and to the court that respondents represented not only the executor but also Hibil, Inc., Gordon, and the other two stockholders of Hibil. Appellant also alleges that as a result of that guarantee the estate lost a right of subrogation and became entitled instead only to a pro rata contribution from the three other coguarantors for its payments on the guarantee. She further alleges that the estate made more substantial payments on the guarantee than did the other guarantors, and that Hibil made cash distributions to the shareholders, no part of which was paid to the estate.

The guarantee was again before the court when it considered Wells Fargo's petition for settlement of the first account filed on July 26, 1972. That petition set forth in detail the Chartered Bank of London's claim against the estate based on Beatrice's original guarantee, and the compromise of that claim accomplished by the Hibil loan guarantee. Appellant had notice of this petition. No objections to the petition were filed by appellant; no appeal was taken from the order settling the account.

It is first necessary to consider whether appellant can now complain of respondents' participation in the Hibil matter. ■ An order settling an executor's account is res judicata and conclusive against a subsequent claim of liability against the executor for negligence or fraud, and such determination is binding on all the parties interested in the estate. (*Carr v. Bank of America etc. Assn.* (1938) 11 Cal.2d 366, 371 [79 Cal.Rptr. 1096, 116 A.L.R. 1282]; Prob. Code, § 931.) A logical corollary of that rule is that such an order is also res judicata against a subsequent claim against the executor's *counsel* for negligence or fraud.

However, on a sufficient showing of *extrinsic* fraud, that order may be set aside in an equitable action. (*Perna v. Bank of America N.T. & S. Assn.* (1938) 28 Cal.App.2d 372, 376 [82 P.2d 605].) Since no appeal has been taken from the order granting the settlement of the first account, appellant can only prevail if she has alleged facts constituting extrinsic fraud. ■ Extrinsic fraud which will warrant a court of equity in setting aside a judgment or decree consists of fraud which prevents a real trial of the issues involved in the case, such as conduct which prevents the injured party from receiving notice of the action or which causes the absence of necessary witnesses. (*Ringwalt v. Bank of America etc. Assn.* (1935) 3 Cal.2d 680, 684 [45 P.2d 967].)

The failure to disclose to the court an attorney's dual representation in a probate proceeding was held to be extrinsic fraud in *Potter v. Moran* (1966) 239 Cal.App.2d 873 [49 Cal.Rptr. 229]. In *Potter* one law firm represented both the trustee of a testamentary trust and the guardian of the estates of two minors, life beneficiaries of the trust. The probate court was not informed of this dual representation before it approved certain accounts of the trustee, including payment of attorneys' fees. Some years later, the residuary beneficiary of the trust brought an action seeking inter alia an annulment of the orders approving the account and the restoration of fees. The complaint also alleged the trustee

had been negligent in the sale of certain stocks. The court stated (at p. 877): "It is imperative that in matters of probate, and especially so in matters heard ex parte, that the court be fully informed as to all facts that might influence the decision to be made. There is an affirmative duty to furnish such information, and the court will properly assume that nothing material to the matter in hand has been concealed...," and held the failure of the trustee and attorneys to disclose this dual representation to the court amounted to extrinsic fraud on the court. Therefore, the court vacated the orders and ordered a de novo reconsideration of the accounts, to determine whether fees were reasonable and whether the trustee was negligent.

■ *Potter* involved counsel's representation of a trustee and the guardian of the beneficiaries, while this case involves the dual representation of a trustee and a third party involved in a transaction. Nonetheless, it appears that the failure to disclose this dual representation to the court amounts to extrinsic fraud according to *Potter,* as the court apparently was not fully informed as to all facts that might influence its decision. We thus conclude that the court order of July 26, 1972, settling the first account does not preclude appellant by res judicata from now alleging that respondents breached their duty to her.

We must now determine whether appellant's complaint alleges facts sufficient to state a cause of action against respondents. ■ In determining the sufficiency of a complaint against a general demurrer, we consider the demurrer as admitting all material and issuable facts as properly pleaded. "'[T]he rule is, that if upon a consideration of all the facts stated it appears that the plaintiff is entitled to any relief at the hands of the court against the defendants, the complaint will be held good, although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged.'" (*Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, 549 [99 Cal.Rptr. 745, 492 P.2d 1137], citing *Matteson* v. *Wagoner* (1905) 147 Cal. 739, 742 [82 P. 436].) ■ A judgment on the pleadings is similar to a judgment following the sustaining of a demurrer, and the standard of appellate review is the same. (*Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670, 676 [138 Cal.Rptr. 338].)

■ It is clear that the attorney for a trustee may be held liable to the beneficiary of the trust when he actively participates in a breach of

trust. (See 4 Scott on Trusts (3d ed. 1967) § 326.4, p. 2568; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 89, p. 5449; see also *Andrews* v. *Tuttle-Smith Co.* (1906) 191 Mass. 461 [78 N.E. 99, 101] [attorney liable for breach of trust when he actively participated in fraudulent conversion]; *In re Bond & Mortgage Guarantee Co.* (1952) 303 N.Y. 423 [103 N.E. 2d 721, 726] ["The basic vice is the existence of a personal interest, entangling their private claims with those of their beneficiaries."].)

Whether the counsel to a trustee may be held liable to the beneficiary of the trust for negligent conduct which does not amount to active participation in a breach of trust is less clear. ■ However, in *Goodman* v. *Kennedy* (1976) 18 Cal.3d 335 [134 Cal.Rptr. 375, 556 P.2d 737], the Supreme Court stated that whether an attorney can be held liable to a third person not in privity depends first on whether the attorney owed a duty to that third person. Whether the attorney owes such a duty is a question of law and depends on a judicial weighing of the policy considerations for and against the imposition of liability under the circumstances. The court stated (at pp. 342-343): "'The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.'"

Among the allegations of appellant's complaint, which this court must accept as true, are assertions that at the time Wells Fargo petitioned for authorization to execute the guarantee, respondents were acting as counsel not only for Wells Fargo, but also for Hibil, Inc. and its three principal shareholders, including her father. Appellant also alleges she received no notice of the initial hearing on the execution of guarantee, and was not informed that it could alter the estate's liability to Chartered Bank. She further alleges respondents did not inform Wells Fargo or the court that they also represented Hibil. There is nothing in the court's order authorizing execution of the guarantee to suggest that the court was aware that respondents represented both Wells Fargo and Hibil.

The Hibil transaction, while perhaps not intended to affect appellant directly, nevertheless indirectly affected her in that it affected the estate of which she was a beneficiary. As this appeal follows the sustaining of a demurrer, we must accept as true appellant's allegations that the Hibil transaction was detrimental to the estate and to her interests therein. In any event, when the attorney for a trustee and executor also simultaneously represents third parties involved in transactions with the estate, the potential for harm to an unknowing beneficiary is readily apparent.

It is true that in her several amendments to her complaint appellant has not alleged that respondents had any personal interest in the Hibil transaction, nor that they actually improperly benefitted in some way from the execution of the guarantee. ■ However, in all matters connected with his trust a trustee is bound to act in the highest good faith toward all beneficiaries, and may not obtain any advantage over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind. (Civ. Code, § 2228; *Jones* v. *Stubbs* (1955) 136 Cal.App.2d 490, 499-500 [288 P.2d 939].) ■ An attorney who acts as counsel for a trustee provides advice and guidance as to how that trustee may and must act to fulfill his obligations to all beneficiaries. It follows that when an attorney undertakes a relationship as adviser to a trustee, he in reality also assumes a relationship with the beneficiary akin to that between trustee and beneficiary. In contrast to the third party asserting a claim in *Goodman,* appellant here was not someone with whom respondents' client, the trustee Wells Fargo, was to negotiate at arms' length.

Finally, to require at a minimum that a trustee's attorney inform beneficiaries of his dual representation in transactions involving the trust can only have salutary results, such as the elimination of the need for lawsuits similar to the instant action.

Under the principles of *Goodman,* we conclude that respondents owed a duty to appellant to disclose that they represented not only the trustee executor, but also Hibil and the stockholders of Hibil at the time the trustee executor sought authorization to execute the loan guarantee.

Respondents urge that although appellant was not represented by separate counsel on December 10, 1970, when the court authorized the execution of the guarantee, she was so represented in July of 1972, when she received notice of the petition for settlement of the first ac-

count. Based on these facts, respondents urge that in her dealings with the estate at that time, appellant was not relying on any duty which they may have owed her in their capacity as counsel to the executor. Respondents argue that appellant was in reality dealing at arms' length with them. The issue of reliance is part of the broader question of causation, and whether respondents' failure to make the required disclosure caused damage to appellant is, of course, a question of fact, which cannot be resolved in this appeal. (*Ishmael* v. *Millington* (1966) 241 Cal.App.2d 520, 529 [50 Cal.Rptr. 592].) In June of 1971 appellant did retain separate counsel to represent her in a dispute with her father, which we label the Avon transaction. That dispute, to be discussed in more detail hereinafter, revolved around whether certain stocks were community property or Gordon's separate property. The trier of fact must decide whether appellant at that time had stopped relying on respondents as attorneys for the estate relative to all other transactions of the estate, including the Hibil matter.

We conclude that the court erred in sustaining the demurrer relative to the Hibil transaction.

### The Avon Transaction

In June of 1971 Wells Fargo and Gordon filed a petition for "Determination of Entitlement to Distribution of Estate and Petition for Instructions" to determine the character of certain property subject to the probate proceedings, particularly some 2,000 shares of Avon stock, which had increased to 4,000 shares by a stock split after Beatrice's death. Patricia retained attorney Albert J. Horn to represent her in opposition to the above petition. Wells Fargo and Gordon were represented by respondents.

In December of 1971 Patricia and Gordon entered into a written agreement regarding the Avon stock. The agreement was drafted by Patricia's attorney. Patricia agreed to stipulate that the stock was community property, provided that Gordon would make a will bequeathing it to her. The agreement provided that upon receipt of any of the Avon shares from the executor or the present security holder, Gordon was to deposit the stock with Wells Fargo as custodian. The agreement further provided that Gordon and Patricia would execute an "appropriate custodial agreement" which was to provide in part that the stock was not to be sold without the written consent of both. Gordon also agreed not to encumber any of the stock held by Wells Fargo under the custodial

agreement. The court ordered the executor to treat the stock as community property. Patricia's attorney prepared a proposed custodial agreement, which he sent to respondents for approval. Respondents returned the proposed agreement with suggested changes on August 23, 1972. The agreement was never executed.

Sometime in October of 1974 the stock was delivered by Wells Fargo to Gordon, who apparently then pledged it as collateral for a loan from the Menlo Park branch of Wells Fargo. The stock was ultimately sold to pay off that indebtedness during the probate of Gordon's estate.

 Appellant makes substantially the same contentions as to respondents' failure to fulfill their duty to appellant as she did relative to the Hibil transaction. However, in the proceeding involving the Avon stock, appellant and her father, Gordon, were disputing the characterization of the Avon stock as community property, and were clearly adverse.

An attorney has no legal duty of disclosure to a third party who is the adverse party in an adversary proceeding. (*Parnell* v. *Smart* (1977) 66 Cal.App.3d 833, 837 [136 Cal.Rptr. 246].) Respondents represented Gordon, and appellant was represented by her own counsel. An adverse party is not an intended beneficiary of the adverse counsel's client. (*Norton* v. *Hines* (1975) 49 Cal. App.3d 917, 921 [123 Cal.Rptr. 237].) Clearly, respondents had no duty to appellant with respect to the stock transaction.

Appellant argues that although respondents were representing her father in the Avon dispute, they nevertheless still owed her some duty because they simultaneously continued their status as counsel to the trustee. Whether the attorney for an administrator of an estate may act for one of the heirs as against the other heirs in an adversary proceeding relating to the property of the estate depends on the circumstances of the particular case, and whether there is any conflict between the interests of the estate and those of the heir in respect of the matter involved. (*McCabe* v. *Healy* (1902) 138 Cal. 81, 91 [72 P. 359]; *Fairchild* v. *Bank of America* (1961) 192 Cal.App.2d 252, 258 [13 Cal.Rptr. 491].) Here the trustee had no interest in whether the stock was community or separate property. Further, appellant made no objection to the representation of her father by respondents at the time of the dispute over the Avon stock; it appears that she is foreclosed from ob-

jecting to that representation now. (See *Jones* v. *Lamont* (1897) 118 Cal. 499, 504 [50 P. 766].)

The court properly sustained respondents' demurrer relative to the Avon stock transaction.

Judgment is reversed as to appellant's causes of action relative to the Hibil transaction. Judgment is affirmed as to appellant's causes of action relative to the Avon stock transaction. Each party to bear his own costs.

White, P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied January 2, 1980, and appellant's petition for a hearing by the Supreme Court was denied January 30, 1980.