Rosemary J. McLACHLAN, Trustee
of the Mary Butschek Living
Trust, et al., Plaintiffs,

v.

Donald SIMON, an individual and former
Trustee of The Navellier Series Fund,
et al., Defendants.

No. C–97–1258 WHO.

United States District Court,
N.D. California.

July 23, 1998.

---

Samuel Kornhauser, Samuel Kornhauser Law Office, San Francisco, CA, for plaintiffs.

Gregory L. Lippetz, Vincent P. Finigan, Jr., Robert P. Varian, Brobeck Phleger & Harrison LLP, San Francisco, CA, for Donald Simon, defendant.

Gregory L. Lippetz, Vincent P. Finigan, Jr., Robert P. Varian, Brobeck Phleger & Harrison LLP, San Francisco, CA, Ralph C. Alldredge, Leigh A. Kirmsse, Emeryville, CA, for Kenneth Sletten, defendant.

Gregory L. Lippetz, Vincent P. Finigan, Jr., Brobeck Phleger & Harrison LLP, San Francisco, CA, James A. Lassart, Ropers Majeski Kohn & Bentley, San Francisco, CA, for Lawrence Bianchi, defendant.

Jonathan C. Dickey, Alice W. Detwiler, Gibson Dunn & Crutcher LLP, Palo Alto, CA, for Arnold Scott, Massachusetts Financial Services, defendants.

Jacquelyn J. Garman, Hanson Bridgett Marcus Vlahos & Rudy, San Francisco, CA, for Roy Adams, defendant.

## OPINION AND ORDER

ORRICK, District Judge.

Plaintiffs in this case are shareholders and former shareholders of the Navellier Series Fund ("Fund"), Louis G. Navellier, an individual and Trustee and Shareholder of the Navellier Series Fund on his own behalf as a Trustee on behalf of The Navellier Series Fund and as a class representative ("Navellier"), and Navellier Management, Inc ("NMI"). They brought this action against defendants Donald Simon ("Simon"), Kenneth Sletten ("Sletten"), and Lawrence Bian-

chi ("Bianchi"), who are Independent Trustees of the Navellier Series Fund (collectively "Independent Trustees"), Roy Adams ("Adams"), the Independent Trustees' attorney, and Massachusetts Financial Services ("MFS") for, among other things, breach of fiduciary duty. Defendants now move to dismiss the action for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Independent Trustees' motion is denied, and the MFS's and Adams' motions are granted with prejudice.

## I.

On May 15, 1993, Navellier and NMI caused the Fund to be organized as a Delaware business trust to engage in the business of investing assets in an open-end investment company (a mutual fund). Navellier and Jack Drinkwater ("Drinkwater") were elected as Interested Trustees, while Simon, Sletten, and Bianchi were elected as Independent Trustees.[1] On that same day, the Fund entered into an investment advisory agreement with NMI.

In July 1995, Drinkwater was terminated from his employment with NMI, and resigned as an Interested Trustee of the Fund. He was replaced by Alan Alpers as an Interested Trustee.

On April 26, 1996, Navellier made a motion to merge the Fund into The Navellier Performance Funds. This would have terminated the Independent Trustees' positions. The Independent Trustees rejected Navellier's proposal.

Between May and November 1996, the Independent Trustees requested certain information from Navellier as part of their reconsideration of his merger proposal. After Navellier refused to provide the information, it was suggested that the issue of a

merger be presented to the shareholders by way of a proxy. On November 11, 1996, the Independent Trustees voted to have NMI prepare and file a proxy statement with the Securities and Exchange Commission ("SEC").

In early 1997, the Independent Trustees reviewed NMI's proxy filing. On March 13, 1997, a Board of Directors ("Board") meeting was held, which was attended by all of the Trustees. At this meeting, the Fund's Independent Trustees voted not to renew NMI's contract, which was set to expire by its terms on March 15, 1997. The Independent Trustees also voted to hire MFS as the Fund's investment advisor.

Plaintiffs filed a complaint on April 10, 1997 seeking to enjoin defendants, as Trustees (and counsel) of the Fund, from removing Navellier as an Interested Trustee. Between April 1997 and June 1997, plaintiffs brought a series of motions for injunctive relief that attempted to block the Independent Trustees' efforts to obtain ratification of their investment advisory agreement with MFS and to enable NMI to regain control of the Fund.

On May 23, 1997, a majority of shareholders voted for MFS to continue as investment advisor to the Fund. The required two-thirds of the shareholders, however, did not vote to support MFS.[2] MFS was, then, rejected as the Fund manager by default. The results were not announced until June 1997. On July 14, 1997, defendants returned management of the Fund to NMI, and were forced to resign.

On February 2, 1998, the parties filed an amended complaint, which added other Independent Trustees of the Fund and their lawyer, as well as MFS, as defendants, and two different classes of plaintiff shareholders.

---

**1.** Boards of directors are composed of "interested" and "noninterested," or "independent," persons. An "interested" person is defined by statute in 15 U.S.C. §§ 80a–2(a)(19) and 80a–2(a)(3), generally to mean any person having a direct or indirect simple interest in an investment company. No registered investment company shall have a board of directors more than sixty percent of the members of which are persons who are interested persons of such registered company. 15 U.S.C. § 80a–10(a). Inasmuch as the Fund is

organized under Delaware law as a business trust, members of its Board of Directors are herein called "Trustees." The Fund has five Trustees, two of whom are "Interested Persons" (herein "Interested Trustees"). The remaining three are not "Interested Persons" and are herein called "Independent Trustees." *Id.*

**2.** 15 U.S.C. §§ 80a–2(a)(42)(A), 80a–15(a).

Class A plaintiffs are those who were forced to leave the Fund due to the management change and suffered damages, and Class B plaintiffs are those who remained in the Fund and suffered damages due to the management change. The only damages alleged for these classes are capital gains taxes. The causes of action within the amended complaint are for (1) breach of fiduciary duty under 15 U.S.C. § 80a–35(a) against the Independent Trustees, Scott and MFS (first and fifth causes of action); (2) common law breach of fiduciary duty under Delaware law against the Independent Trustees, Scott and MFS (second and sixth cause of action); (3) common law breach of fiduciary duty under California law against Adams (third and seventh cause of action); (4) negligence against Adams (fourth and eighth causes of action); (5) corporate waste against all defendants (ninth cause of action); and (6) interference with prospective economic relations against all defendants (tenth cause of action).

## II.

## A.

## 1.

The Independent Trustees, MFS and Scott[3] first argue that the federal claims should be dismissed because there is no implied private right of action under § 36 of the Investment Company Act of 1940 ("ICA") as codified in 15 U.S.C. § 80a–35(a).[4] Plaintiffs, they claim, lack standing to bring suit under this statute. Because Congress intended shareholders to have a right of action under ICA § 36(a), the Court finds an implied private right of action.

■ In determining whether to infer a private right of action from a federal statute, the focus of the Court's inquiry is Congressional intent. *Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 98 L.Ed.2d 512

(1988). As guides to discerning that intent, the Supreme Court often has relied on the four-factor test set forth in *Cort v. Ash,* along with other tools of statutory construction. *Id.*

> First, is the plaintiff one of the class for whose *especial* benefit the statute was enacted, that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (internal quotation marks and citations omitted). The four factors are not, however, entitled to equal weight; the central inquiry remains the intent of Congress. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

■ The Court first looks to the language of the statute itself, then to the legislative history. *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 16–17, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). The absence of anything in the legislative history that indicates an intent to confer a private right of action is not dispositive. *Id.* at 18, 100 S.Ct. 242. The failure of Congress expressly to consider a private right of action "is not inevitably inconsistent with an intent on its part to make such a remedy available." *Id.* Rather, "[s]uch an intent may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment." *Id.* "The intent of Congress remains

---

**3.** Adams also joins in both of the motions by the other defendants.

**4.** Section 80a–35(a)(1) of the ICA provides:

The Commission is authorized to bring an action in the proper district court of the United States ... alleging that a person serving or acting in one or more of the following capacities has engaged ... in any act or practice constituting a

breach of fiduciary duty involving personal misconduct in respect of any registered investment company for which such person so serves or acts—

 (1) as officer, director, member of any advisory board, investment advisor, or depositor....

the ultimate issue, however, and 'unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.' " *Thompson*, 484 U.S. at 179, 108 S.Ct. 513 (quoting *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 94, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981)).

■ The question of what remedies are available under a statute that provides a private right of action is analytically distinct from the issue of whether such a right exists in the first place. *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 66, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). Once the Court has found that Congress intended to create a private right of action, however, "we presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise." *Id.* at 66, 112 S.Ct. 1028.

■ The language of § 36 only expressly allows the SEC to bring suit. Despite that clear language, four Courts of Appeals have found an implied private right of action.[5] Lest there be any doubt concerning the private right of action, Congress, in 1980, amended the ICA in the Small Business Investment Incentive Act, and evidenced a clear intent for courts to imply a private cause of action in § 36. The House Report on Public Law No. 96–477 states that "breaches of fiduciary duty involving personal misconduct should be remedied under Section 36(a) of the Investment Company Act .... the Committee contemplates suits by shareholders as well as by the Commission, since these are the persons the provision is designed to protect...." *Bancroft Convertible Fund*, 825 F.2d at 736 (quoting H.R.Rep. No. 1341, 96th Cong., 2d Sess. 28–29 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4800, 4810–11).

Thus, Congress clearly intended for § 36 to provide a private right of action to shareholders suing board members and investment advisors for breach of fiduciary duty, and the Court finds a private cause of action exists under § 80a–35(a). The motions of the Independent Trustees and Scott and MFS to dismiss the first and fifth causes of action are denied on this ground.

*2.*

The Independent Trustees, Scott and MFS next contend that plaintiffs cannot state a cause of action under § 80a–35(a) for breach of fiduciary duty because the Business Judgment Rule ("BJR") protects defendants. Plaintiffs, however, have alleged certain facts that, if true, would overcome the BJR presumption.

■ The BJR "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del.Sup.1984) (citations omitted). This presumption only attaches to decisions made by directors who are completely independent and wholly disinterested. *Id.* When the BJR applies, it imposes upon the party challenging the decision the burden of rebutting the presumption. *Id.* The BJR applies to the breach of fiduciary standard under § 36 as it does to state causes of action. *Reserve Management Corp. v. Anchor Daily Income Fund, Inc.*, 459 F.Supp. 597, 611 (S.D.N.Y. 1978).

■ Plaintiffs argue that the BJR presumption does not apply in this case. They contend that the Trustees took defensive measures in the context of a battle for corporate control, which triggers the heightened scrutiny first mandated by the Delaware Supreme Court in *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946 (Del.Sup.1985).

**5.** *See, e.g., Brown v. Bullock*, 294 F.2d 415, 418 (2d Cir.1961); *Esplin v. Hirschi*, 402 F.2d 94, 103 (10th Cir.1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Levitt v. Johnson*, 334 F.2d 815, 819 (1st Cir.1964), *cert. denied*, 379 U.S. 961, 85 S.Ct. 649, 13 L.Ed.2d 556 (1965), *Bancroft Convertible Fund, Inc. v. Zico Inv. Holdings, Inc.*, 825 F.2d 731, 735 (3d Cir.1987). Only the Eighth Circuit refused to imply a private cause of action, but that holding was thrown into doubt by a later decision of that Circuit. *See Brouk v. Managed Funds, Inc.*, 286 F.2d 901, 912 (8th Cir.1961), *cert. denied*, 366 U.S. 958, 81 S.Ct. 1921, 6 L.Ed.2d 1252 (1961), *vacated as moot per curiam*, 369 U.S. 424, 82 S.Ct. 878, 8 L.Ed.2d 6 (1962), later questioned in *Greater Iowa Corp. v. McLendon*, 378 F.2d 783, 793 (8th Cir.1967).

In *Unocal,* the Court held that when the BJR is applied to a board adopting a defensive mechanism (in that case a discriminatory self-tender) in response to a takeover threat, the initial burden of showing that the BJR applies falls upon the directors. *Id.* Furthermore, the Unocal standard applies whether the takeover bid is pending or not. *See, e.g., Moran v. Household Int'l, Inc.,* 500 A.2d 1346 (Del.Sup.1985).

All of the cases cited by plaintiffs and defendants on this issue, however, deal with defensive mechanisms that were put in place to ward off potential corporate takeovers. That is not the case here. The proposed merger of the Fund with The Navellier Performance Funds, and the possible retaliation for the firing of Drinkwater are not similar to the possibility of a corporate takeover.

In any event, the main concern of courts in such takeover situations is that the directors will frustrate or completely disenfranchise the shareholders' right to vote. *Stroud v. Grace,* 606 A.2d 75, 91 (Del.Sup.1992). Here, the shareholders did vote on whether to allow MFS to continue as the investment advisor. Thus, the Independent Trustees did not usurp the right of shareholders to vote because a shareholder vote on MFS (and de facto on NMI) was held. The proper BJR standard, then, is the normal presumption, which plaintiffs must overcome.

■ Plaintiffs have, however, alleged facts that, if true, would overcome the BJR presumption. They allege that the Independent Trustees took actions against Navellier and NMI in retaliation for Navellier's firing of Drinkwater as a trustee, and in order to entrench themselves on the Board. The amended complaint alleges actions by the Independent Trustees that support these allegations. For example, plaintiffs allege that the Independent Trustees were upset by Drinkwater's firing, defeated the merger proposal, failed to renew NMI's contract, ousted Navellier from the Board, demanded privileged personal financial information from Navellier, interfered with the SEC's

review of the potential proxy vote on the merger, and had an agreement with MFS to remain as Board members.

For a Rule 12(b)(6) motion to dismiss, the Court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from those allegations. *NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). Thus, the Independent Trustees', Scott and MFS' motions to dismiss the first and fifth causes of action under § 80a–35(a) are denied because plaintiffs have adequately pled to overcome the presumption of the BJR.

### 3.

Plaintiffs assert that Scott and MFS breached a fiduciary duty to Fund shareholders by convincing the Trustees not to renew NMI's investment advisory contract. Under the ICA, it is within the Independent Trustees' sole discretion to renew the investment advisor's contract. 15 U.S.C. § 80a–15(c). In fact, at the time the decision was made by the Independent Trustees, Scott and MFS did not even owe a fiduciary duty to the Fund or its shareholders under the ICA. MFS did not become the investment company advisor until after the March 13, 1997 vote, and Scott was not a trustee until April 10, 1997.

■ Plaintiffs advance several theories under which they argue Scott and MFS are liable under the ICA. The first of these is that MFS and Scott were "de facto" investment advisor and trustee. Plaintiffs point out that MFS drafted the investment advisory agreements and minutes removing NMI for the March 13, 1997 meeting.[6] They assert that NMI was, then, "acting" as the investment advisor at that time. As the "acting" advisor, MFS—and its representative Scott—had a fiduciary duty to the Fund's shareholders under the ICA because § 80(a)–35(a) holds persons "serving or acting" in the role of investment advisor to such a duty.

---

**6.** These facts are not relied on in the amended complaint. In fact, plaintiffs rely on facts, and statutes (§§ 80a–47(a), 80a–2(a)(9)) that are not found in the amended complaint. Because they

have no merit, rather than make plaintiffs amend the amended complaint, the Court will deal with them here.

■ Plaintiffs, however, have cited no authority to support their theory of a "de facto" advisor. Indeed, such a theory does not seem to exist in case law.[7] It is also doubtful that "serving or acting" includes the situation in which MFS found itself. MFS could not have acted as the investment advisor until the Independent Trustees voted to accept its contract at the March 13 meeting. Thus, MFS had no fiduciary duty to shareholders stemming from § 80a–35(a), and no authority to renew NMI's contract, at the time the Independent Trustees voted not to renew NMI as the investment advisor.

■ Plaintiffs also argue that Scott and MFS are liable for breach of fiduciary duty because they procured the Independent Trustees' breach under § 80a–35(a). They rely on § 80a–47(a), which makes it "unlawful for any person, directly or indirectly, to cause to be done any act or thing through or by means of any other person which it would be unlawful for such person to do under the provisions of this subchapter . . . ." Plaintiffs contend that Scott and MFS caused the Independent Trustees not to renew NMI's contract because they controlled the Independent Trustees.

The definition of "control" is provided by § 80a–2(a)(9).[8] Under this section, "control means the power to exercise a controlling influence over the management or policies of a company . . . ." Plaintiffs allege that Scott and MFS control the Independent Trustees because they offered to keep them on as Independent Trustees, and offered them insurance.

Plaintiffs, however, neglected to read the remainder of § 80a–2(a)(9). The statute is concerned with control through stock ownership.[9] It specifically states that any person who does not own more than twenty-five percent of the voting shares of the company is presumed not to control the company. Furthermore, there is a presumption that natural persons, which the Independent Trustees are, are not controlled persons. Finally, these presumptions remain in force until the SEC makes a determination to the contrary. Because the SEC has not made any such determination, whether MFS and Scott can be said to have controlled the Independent Trustees or not, plaintiffs cannot rely on § 80–a2(a)(9). Scott and MFS did not, then, "control" the Independent Trustees and "cause" them to not renew NMI's contract. Scott and MFS's motion to dismiss with prejudice the first and fifth causes of action is granted.

B.

1.

■ Plaintiffs bring their second and sixth causes of action against the Independent Trustees, Scott and MFS for breach of fiduciary duty under Delaware statutory and common law. Defendants argue that the BJR protects them from liability. This analysis is identical to that on the BJR in section II.A.2. above. Thus, the Independent Trustees' motion to dismiss the second and sixth

7. Plaintiffs have not made a claim for aiding and abetting or conspiracy in any of their breach of fiduciary duty claims. To the extent they attempt to do so with these allegations, such an implied cause of action is not allowed under the ICA. *In re ML–Lee Acquisition Fund II, L.P. Sec. Litig.,* 848 F.Supp. 527, 545–547 (D.Del.1994); *See also Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 179, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994).

8. Section 80a–2(a)(9) states in relevant part:
"Control" means the power to exercise a controlling influence over the management or policies of a company, unless such power is solely the result of an official position with such company.
Any person who owns beneficially, either directly or through one or more controlled companies, more than 25 per centum of the voting securities of a company shall be presumed to control such company. Any person who does not so own more than 25 per centum of the voting securities of any company shall be presumed not to control such company. A natural person shall be presumed not to be a controlled person within the meaning of this subchapter. Any such presumption may be rebutted by evidence, but except as hereinafter provided, shall continue until a determination to the contrary made by the Commission by order either on its own motion or on application by an interested person . . . .

9. The cases cited by plaintiffs for support also show that "control" is solely a matter of voting shares owned. *See, e.g., Harriman v. E.I. DuPont DeNemours & Co.,* 372 F.Supp. 101 (D.Del.1974).

causes of action for breach of fiduciary duty is denied because plaintiffs have adequately pled to overcome the presumption of the BJR.

### 2.

 Plaintiffs cannot plead an action under Delaware law for breach of fiduciary duty against Scott and MFS. Plaintiffs assert that Scott and MFS breached a fiduciary duty to Fund shareholders by convincing the Independent Trustees not to renew NMI's investment advisory contract just as they did in their first and fifth causes of action. At the time the decision was made by the Independent Trustees on March 13, 1997, Scott and MFS did not owe a fiduciary duty to the Fund or its shareholders under Delaware law. MFS did not become the investment company advisor until after that March 13 vote, and Scott was not a trustee until April 10, 1997.

Under Delaware law, the analysis is similar to that under the ICA. Scott was not a trustee, and MFS was not the investment advisor at the time the Independent Trustees voted not to renew NMI's investment advisor contract on March 13, 1997. In *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1056 (Del.Ch.1984), the Court made it clear that "[s]tate law claims of breach of ... fiduciary relationship must subsist on the actuality of a specific legal relationship, not its potential."

Scott and MFS cannot be considered "control persons" under Delaware law just as they could not be so considered under the ICA. "Control" in Delaware means ownership of voting shares as it does under the ICA. For example, in *Harriman v. E.I. DuPont DeNemours & Co.*, 372 F.Supp. 101 (D.Del.1974), the Court discussed several ways that outsiders could be considered to control other companies under Delaware law. *Id.* at 106. All such examples dealt with

stock ownership. *Id.* The *Gilbert* Court also determined that outsiders do not assume a fiduciary duty to a corporation's shareholders because they have "superior bargaining position in dealing with management." *Gilbert,* 490 A.2d at 1055. Scott and MFS's motion to dismiss the second and sixth causes of action with prejudice is granted.[10]

### C.

 Plaintiffs have brought four causes of action against Adams only. Adams was the Independent Trustees' legal advisor from October 1995 to July 14, 1997. The third and seventh causes of action are for breach of fiduciary duty under California law. The fourth and eighth causes of action are for negligence under California law.[11]

### 1.

 Plaintiffs' third and seventh causes of action are brought against Adams alone for breach of fiduciary duty.

Plaintiffs contend that Adams, by virtue of his position as counsel to the Independent Trustees, had a fiduciary duty to the Funds' shareholders. Their main piece of authority, however, is the depublished *Gump v. Wells Fargo Bank, N.A.*, 237 Cal.Rptr. 311, 355 (1987). The only other authority offered is *Morales v. Field, DeGoff, Huppert & MacGowan*, 99 Cal.App.3d 307, 160 Cal.Rptr. 239 (1979). In *Morales,* the Court stated that counsel to the trustee of a testamentary trust assumed a "relationship with the beneficiary akin to that between trustee and beneficiary." *Id.* at 316, 160 Cal.Rptr. 239.

This language from *Morales* does not support plaintiffs' position. First, the testamentary trust in *Morales* is quite different from the business trust at issue here. Second, although there may be a "relationship" with the beneficiary, the beneficiary is not also the

---

**10.** Because the Court dismisses these claims, it does not reach Scott and MFS's contention that the Investment Advisors Act of 1940 preempts these state law claims.

**11.** As an introductory note, plaintiffs made numerous mistakes in their opposition to Adams' motion. For example, they attribute two separate quotations to the Court in *Morales v. Field, DeGoff, Huppert & MacGowan,* 99 Cal.App.3d

307, 160 Cal.Rptr. 239 (1979). In reality, these quotations come from the depublished case of *Gump v. Wells Fargo Bank, N.A.,* 237 Cal.Rptr. 311, 335 (1987). A depublished case, of course, cannot be cited as authority. The Court cannot have any confidence in plaintiffs' counsel or plaintiffs' case when it is confronted by such egregious mistakes.

attorney's client, and there is no fiduciary duty. The court in *Lasky, Haas, Cohler & Munter v. Superior Court,* 172 Cal.App.3d 264, 218 Cal.Rptr. 205 (1985), found that this language from Morales "falls short of a holding that the beneficiary is a client of the trustee's counsel." *Id.* at 283, 218 Cal.Rptr. at 216. Furthermore, *Pierce v. Lyman,* 1 Cal.App.4th 1093, 3 Cal.Rptr.2d 236 (1991), makes it clear that, when no attorney-client relationship exists between counsel to trustees and beneficiaries, no fiduciary obligations exist between them. *Id.* at 1102, 3 Cal. Rptr.2d 236. Adams' motion to dismiss the third and seventh causes of action is granted with prejudice.

### 2.

The fourth and eighth causes of action are brought against Adams for negligence.

 In order for plaintiffs to sue Adams for negligence, they must establish that he owed them a duty of care. *Goldberg v. Frye,* 217 Cal.App.3d 1258, 1267, 266 Cal.Rptr. 483 (1990). Attorneys generally will not be liable to a third person who is not in privity of contract with them because attorneys only owe a duty to their client. *Schick v. Bach,* 193 Cal.App.3d 1321, 1329, 238 Cal.Rptr. 902 (1987). Whether an attorney may under the circumstances owe a duty to a nonclient "is a question of law and depends on a judicial weighing of the policy considerations for and against the imposition of liability...." *Goodman v. Kennedy,* 18 Cal.3d 335, 342, 134 Cal.Rptr. 375, 556 P.2d 737 (1976) (citations omitted).

The court in *Skarbrevik v. Cohen, England & Whitfield,* 231 Cal.App.3d 692, 282 Cal. Rptr. 627 (1991), applied the above principles to determine that an attorney owed no duty to a nonclient. The attorney, corporate counsel, advised the majority shareholders on the procedure to follow in order to dilute the minority shareholder's stock. *Id.* at 698–700,

282 Cal.Rptr. at 630–32. The Court held that "an attorney representing a corporation does not become the representative of its stockholders merely because the attorney's actions on behalf of the corporation also benefit the stockholders...." *Id.* at 703, 282 Cal.Rptr. at 634 (citing *Meehan v. Hopps,* 144 Cal.App.2d 284, 293, 301 P.2d 10, 15–16 (1956)). Thus, the Court found that the attorney owed no duty to the minority shareholder, and could not be liable to that shareholder.[12]

 The situation here is analogous to that in *Skarbrevik.* Plaintiffs admit that Adams was counsel for the Independent Trustees. They allege, however, that Adams owed a duty of care to the Funds' shareholders because his advice to his clients might affect them. Thus, plaintiffs argue, any alleged negligent advice Adams gave to the Independent Trustees that damaged plaintiffs would be actionable.

In fact, Adams had no duty of care to the shareholders of the Fund because the Independent Trustees were his sole client. As in *Skarbrevik,* simply because Adams' advice might affect the shareholders does not give rise to a cause of action by those shareholders for negligence. Adams motion to dismiss the fourth and eighth causes of action is granted with prejudice.

### D.

 The ninth cause of action for corporate waste is brought by Navellier as an Interested Trustee of the Fund against all defendants. The essence of the claim is that defendants wasted the Fund's assets in the proxy battle to affirm MFS as the investment advisor. Defendants contend that the actions taken during the proxy contest were legal and necessary. Hence, they argue, those actions are protected by the BJR.[13]

---

**12.** The *Skarbrevik* situation is analogous to the standard determined by the Court in *Goldberg,* 217 Cal.App.3d at 1267, 266 Cal.Rptr. 483, for counsel for estate administrators. There the Court stated that the attorney for the administrator of an estate represents the administrator and not the estate so there is no duty to the estate. *Id.*

**13.** The Independent Trustees also claim that Navellier should have made a demand on the Board to end the alleged waste. Because Navellier was engaged in this proxy contest with the Board, any such demand would clearly have been futile. Thus, Navellier may bring the claim without having made a demand on the Board.

742

If, however, defendants' actions in not renewing NMI's contract and ousting Navellier from the Board constituted breaches of fiduciary duty, any damages flowing from those breaches are also actionable. Just as those decisions by the Independent Trustees may be protected by the BJR, so any expenditures from waging the proxy contest may be protected by the BJR. Because plaintiffs have alleged sufficient facts to overcome the BJR presumption for the decision to replace NMI with MFS, though, the BJR is also overcome at this stage for the waste cause of action.

■ Because the Independent Trustees made the decision to terminate NMI and hire MFS, they are also liable for any alleged damages flowing from that decision. As discussed above, Scott and MFS are not liable for the initial decision of the Board. Any assets spent during the proxy contest flowed from that decision because by law the shareholders had to vote on MFS's contract pursuant to § 80a–15. Any assets spent by Scott and MFS while they were fiduciaries, then, were mandated by the Independent Trustees' decision. Scott and MFS are not liable for any "waste" arising from the proxy battle. Finally, as discussed above, Adams was also not a fiduciary at the time of the March 13, 1997, Board meeting so he cannot be liable for any alleged waste. In any event, Adams never had any authority to spend corporate assets.

Thus, the Independent Trustees' motion to dismiss the ninth cause of action is denied. Scott and MFS's and Adams' motions to dismiss the ninth cause of action for corporate waste are granted with prejudice.

E.

NMI brings the tenth cause of action for interference with prospective economic relations against all defendants.[14]

■ The Independent Trustees contend that an officer or director cannot be personally liable for interfering with an economic relationship of their employer. *See Shearin v. E.F. Hutton Group, Inc.*, 652 A.2d

578, 590 (Del.Ch.1994). While they are correct that this is the general rule, there is an exception for corporate officers who exceed the scope of their agency. *International Ass'n of Heat & Frost Insulators & Asbestos Workers, Local Union 42 v. Absolute Envtl. Servs., Inc.*, 814 F.Supp. 392, 400 (D.Del. 1993). This rule is consistent with the BJR, which holds corporate officers immune from personal liability when they make business decisions in their fiduciary capacity. *Id.* Because the rule for officer liability for intentionally interfering with economic relationships is the same standard as that for the BJR, as discussed above, plaintiffs have pled sufficient facts to defeat the Independent Trustees' motion. The Independent Trustees' motion to dismiss the tenth cause of action is denied.

■ Scott and MFS argue that they cannot be held liable for interference with the prospective economic relations of a competitor. They are correct that this "competition privilege" shields Scott and MFS from liability for allegedly persuading the Independent Trustees to allow NMI's contract to expire and hire MFS. The court in *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 45 Cal.Rptr.2d 436, 447, 902 P.2d 740 (1995), held that a plaintiff who seeks to recover for an alleged interference with prospective economic relations must prove that the defendant "engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." Plaintiffs here have not made, nor can they make, any such showing. Scott and MFS were within their rights to use persuasive sales tactics to convince the Independent Trustees to hire MFS. Scott and MFS's motion to dismiss the tenth cause of action is granted with prejudice.

■ Finally, Adams contends that he cannot be liable or interference with the prospective economic relations between NMI and the Fund because an attorney cannot be liable for urging his client to breach a con-

**14.** Plaintiffs have failed to state whether this claim is brought under California or Delaware

law. The Court will, then, refer to the law of both states.

tract.[15] *Los Angeles Airways, Inc. v. Davis,* 687 F.2d 321 (9th Cir.1982). Plaintiffs, however, counter that Adams can be liable because he participated in carrying out the breach in order to maintain his employment as counsel to the Independent Trustees. Plaintiffs have not, and cannot, allege that Adams did anything more than advise his clients how to proceed according to the law and then carry out their decisions. Furthermore, any desire Adams had to promote his standing within his job does not negate his privilege to advise his clients to breach a contract. *Id.* at 328. Adams' motion to dismiss the tenth cause of action is granted with prejudice.

### III.

Accordingly,

IT IS HEREBY ORDERED that:

1. The Independent Trustees' motion to dismiss the first and fifth causes of action brought under 15 U.S.C. § 80a–35(a) is DENIED, but Scott and MFS's motion to dismiss these causes of action is GRANTED with prejudice.

2. The Independent Trustees' motion to dismiss the second and sixth causes of action for breach of fiduciary under Delaware law is DENIED, but Scott and MFS's motion to dismiss these claims is GRANTED with prejudice.

3. Adams' motion to dismiss the third and seventh causes of action for breach of fiduciary duty under California law is GRANTED with prejudice.

4. Adams' Motion to dismiss the fourth and eighth causes of action for negligence under California law is GRANTED with prejudice.

5. The Independent Trustees' motion to dismiss the ninth cause of action for waste is DENIED, but Scott and MFS's and Adams' motions to dismiss the ninth cause of action are GRANTED with prejudice.

6. The Independent Trustees' motion to dismiss the tenth cause of action for interference with prospective economic relations is DENIED, but the motions to dismiss of Scott and MFS and Adams to dismiss the tenth cause of action are GRANTED with prejudice.

**15.** Of course, NMI's contract was not breached, it was simply allowed to expire.