[No. B024429. Second Dist., Div. Two. July 30, 1987.]

PETER M. SCHICK, Plaintiff and Appellant, v.
RICHARD LERNER, Defendant and Respondent.

1324

COUNSEL

Hirschtick, Chenen, Lemon & Curtis, Arthur R. Chenen and Ramona M. Vipperman for Plaintiff and Appellant.

Michel & Cerny and Ross Cerny for Defendants and Respondents.

OPINION

COMPTON, Acting P. J.—Plaintiff Peter M. Schick instituted this action against defendants Richard Lerner, Roger Bach, and Sheila Mickelson, among others, seeking damages for the alleged wrongful disclosure of certain confidential information. Following plaintiff's filing of a third amended complaint, the trial court struck certain allegations contained therein (see Code Civ. Proc., §§ 435, 436), sustained Lerner's demurrer thereto, and entered an order of dismissal as to that defendant only (Code Civ. Proc., § 581, subd. (f)).[1] This appeal follows. We affirm.

---

[1] Neither Bach nor Mickelson are parties to this appeal. All told, Lerner was named as a defendant in eight out of ten causes of action. Although defendant successfully demurred to both the first and second amended complaints, plaintiff was given the opportunity to amend. The third amended complaint stood on all the original seven causes of action directed against Lerner and added a new count for breach of statutory duty. The trial court sustained Lerner's demurrer to the additional cause of action and struck the remaining counts which fell under the earlier demurrer.

Pursuant to Code of Civil Procedure section 581, subdivision (f) a trial court is empowered to dismiss an action "(1) . . . [A]fter a demurrer to the complaint is sustained without leave to amend and either party moves for dismissal. (2) . . . [A]fter a demurrer to the complaint is sustained with leave to amend, the plaintiff fails to amend it within the time allowed by the court and either party moves for dismissal. (3) After a motion to strike the whole of a complaint is granted without leave to amend and either party moves for dismissal."

The pertinent allegations of the amended complaint reveal the following scenario. Prior to August 1981, plaintiff and Mickelson had been involved in a long-term personal relationship during which they lived together for approximately seven years. In July 1981, the couple consulted defendant Dr. Roger Bach, a licensed psychologist, in hopes of resolving various interpersonal problems. At that time, the parties mutually agreed that all statements made and any information divulged during the course of therapy would remain confidential.[2] Although counseling sessions commenced the following month, the couple's relationship eventually ended.

In May 1983, Mickelson filed an action against plaintiff seeking financial support and a division of property interests under the principles of *Marvin* v. *Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106]. In connection therewith, Mickelson requested that Bach prepare and execute a declaration detailing statements made by plaintiff during the course of therapy that related to the nature of the couple's relationship. Bach, in turn, consulted with Richard Lerner, a practicing attorney, who, after having the therapist recount plaintiff's statements, advised him that he could legally execute the declaration. That document, containing confidential information disclosed by plaintiff while in therapy, was subsequently lodged with the court in Mickelson's action.[3]

Upon learning of the declaration, plaintiff notified Bach that he was initiating a complaint against him with various state licensing and disciplinary authorities. Immediately thereafter, the doctor contacted Lerner and forwarded to him the couple's file, including notes of his conversations with plaintiff. Following Lerner's review of those documents both he and Bach attempted to dissuade plaintiff from pursuing his administrative action by offering him statements made by Mickelson during private consultations that could be used to defeat her action. Plaintiff refused and sometime later commenced the instant litigation.

Alleging that the three defendants conspired to cause him harm, plaintiff initially pleaded seven causes of action against Lerner, including breach of

---

[2] Plaintiff specifically alleged that Bach induced him into undergoing therapy by falsely and fraudulently representing that all statements made during the sessions would be held in complete confidence.

[3] Pursuant to Evidence Code section 459, we have taken judicial notice of the superior court file in the action in which Bach submitted his declaration. That document was typed on stationery bearing the name of Mickelson's attorney and was lodged with the court the same date her complaint was filed. It apparently was submitted in conjunction with Mickelson's petition for a temporary restraining order and preliminary injunction. A minute order dated June 15, 1983, indicates that the trial court, on Schick's motion, struck the declaration and thus precluded its use in those proceedings. It remains, however, a part of the court file.

fiduciary duty, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, invasion of privacy, fraud, and inducing breach of contract.[4] Each of these allegations was premised on the theory that Lerner advised Bach to act in a fashion which breached various duties the doctor purportedly owed to plaintiff by virtue of the psychotherapist-patient relationship.[5] Further, on the basis that Lerner "knew or should have known" that his advice to Bach would damage plaintiff, the complaint alleged that the attorney committed malpractice when he advocated the filing of the declaration.[6]

In the third amended complaint plaintiff alleged for the first time that Bach had breached his statutory duty to assert the psychotherapist-patient privilege (see Evid. Code, §§ 912, 1014, subd. (c), 1015)[7] by executing and allowing the declaration to be filed in conjunction with Mickelson's action. Lerner purportedly encouraged such a breach by advising his client to reveal the confidentially disclosed information.

Lerner demurred to each of the amended complaints on the grounds that he was under no duty to protect plaintiff's rights and that the complaint alleged insufficient facts to state causes of action for emotional distress, invasion of privacy, fraud, breach of fiduciary duty, breach of statutory duty, and inducing breach of contract. He further asserted that Bach's declaration was immune from civil liability pursuant to Civil Code section 47, subdivision 2.

---

[4] Unaware that Lerner had advised Bach he could file the declaration without fear of liability, plaintiff's original complaint did not name the attorney as a defendant. Only after deposing Bach did plaintiff discover the extent of Lerner's involvement.

[5] The conspiracy allegation reads in pertinent part: ". . . Defendant Lerner furthered the conspiracy by cooperating with and lent aid and encouragement to and ratified and adopted the acts of the other Cross [sic] Defendants in that he advised Defendant Bach to violate Dr. Schick's rights when he knew or should have known that there was no legal justification for this advice and that the natural and necessary consequences of his acts would be substantial injury to Dr. Schick."

[6] In relation to plaintiff's cause of action for malpractice, the complaint states as follows: ". . . [A]t all times relevant hereto, it was foreseeable that, in the event of any malpractice or negligence on the part of Defendant Lerner, as a direct and proximate result of that negligence or malpractice, Dr. Schick would suffer harm. As such, in undertaking to advise Defendant Bach, Defendant Lerner undertook a duty to Dr. Schick to act in accordance with reasonable care and skill so as not to harm Dr. Schick. [¶] At all times . . ., Defendant Lerner failed to exercise reasonable care and skill in undertaking to perform such legal services for Defendant Bach and negligently and carelessly advised Defendant Bach to act in direct contravention of the rights of Dr. Schick and in direct contravention of, *inter alia,* the California Evidence Code and the Codes of Ethics of the California Psychological Association and the American Psychological Association. [¶] Had Defendant Lerner exercised reasonable care and skill in the foregoing matter, Dr. Schick would not have been harmed as described herein and Defendant Mickelson would not have filed the palimony action."

[7] The Evidence Code provides generally that a psychotherapist must claim as privileged his patient's confidential communications whenever disclosure is sought unless the holder of the privilege (i.e., the patient) has authorized the therapist to divulge the information.

Plaintiff first contends that he has alleged the minimal facts necessary to maintain an action against Lerner, predicated in large part on his involvement in a conspiracy, and that any deficiences in pleading may be remedied after conducting further discovery. In appraising the merits of this latter argument we are mindful of the fact that the trial court sustained two of defendant's demurrers with leave to amend, and that plaintiff elected to stand on his complaint after making only minor changes in the wording of the conspiracy allegation. Under such circumstances, we must resolve all ambiguities and uncertainties raised by the demurrers against plaintiff and presume that he has stated as strong a case as he can. (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572-573, fn. 3 [108 Cal.Rptr. 480, 510 P.2d 1032]; *Hooper* v. *Deukmejian* (1981) 122 Cal.App.3d 987, 994 [176 Cal.Rptr. 569]; *Sierra Investment Corp.* v. *County of Sacramento* (1967) 252 Cal.App.2d 339, 341 [60 Cal.Rptr. 519].) Similarly, facts not alleged are presumed not to exist. (*C & H. Foods Co.* v. *Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055, 1062 [211 Cal.Rptr. 765].) "When a plaintiff elects not to amend a complaint after a demurrer has been sustained with leave to amend, if the complaint is objectionable on any ground raised by the demurrer, the judgment of dismissal must be affirmed." (*Hooper* v. *Deukmejian, supra,* 122 Cal.App.3d at p. 994.)

The effect of alleging the existence of a conspiracy is to implicate all who participated in the common design and thus to fasten liability on those who agree to the plan to commit the wrong as well as those who actually carry it out. (*Okun* v. *Superior Court* (1981) 29 Cal.3d 442, 454 [175 Cal.Rptr. 157, 629 P.2d 1369]; *Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 316 [70 Cal.Rptr. 849, 444 P.2d 481]; *Bartley* v. *California Association of Realtors* (1980) 115 Cal.App.3d 930, 934 [173 Cal.Rptr. 284].) The primary significance of conspiracy in a civil action " ' . . . lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity.' " (*Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 631 [102 Cal.Rptr. 815, 498 P.2d 1063]; *Wetherton* v. *Growers Farm Labor Assn.* (1969) 275 Cal.App.2d 168, 177 [79 Cal.Rptr. 543].)

As distinguished from a criminal conspiracy, "[a] civil conspiracy however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage." (*Unruh* v. *Truck Insurance Exchange, supra,* at p. 631.)

To state a cause of action for conspiracy, a complaint must allege: (1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant threreto; and (3) the damage resulting from such act or

acts. (*Wise* v. *Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 64-65 [35 Cal.Rptr. 652].) The sine qua non of a conspiratorial agreement is the knowledge on the part of the alleged conspirators of its unlawful objective and their intent to aid in achieving that objective.

■ While an attorney may not, with impunity, conspire with a client to defraud or injure a third person or in the course of his representation of such client engage in intentional tortious conduct against third persons (see *Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 109 [128 Cal.Rptr. 901]), stating a cause of action against an attorney for the conduct of his client requires more than a mere conclusory allegation that the attorney and client engaged in a conspiracy.

■ Only properly pleaded factual allegations are deemed admitted for the purposes of a demurrer. (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732]; *Loehr* v. *Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071 [195 Cal.Rptr. 576].)

■ Here, no reasonable inference may be drawn from the facts as pleaded that defendant Lerner intended to injure the plaintiff in any way whatsoever. At most, the complaint avers that Lerner "knew or should have known" that his advice to Bach would, in some way, harm the plaintiff. Such a vague allegation avails plaintiff nothing. That allegation sounds in negligence while the main thrust of the complaint sounds in intentional tort.

The complaint alleges that a conspiracy between Bach and Mickelson arose in July of 1981. Lerner was not consulted until May of 1983. In order to maintain an action against Lerner on a theory of vicarious liability arising out of his joining an already formed conspiracy, the alleged facts must show either expressly or by reasonable inference that he had knowledge of the object and purpose of the conspiracy, that there was an agreement to injure the plaintiff, that there was a meeting of the minds on the objective and course of action, and that as a result one of the defendants committed an act that resulted in the injury.

Disregarding the conclusory allegations in the complaint it is plain that plaintiff in his attempt to plead a cause of action against Lerner is seeking the "legally impossible." By relying solely upon the talismanic allegation of conspiracy, he has attempted to fashion a potpourri of theories that are unsupported by any properly pleaded ultimate facts.

■ Plaintiff's causes of action against Lerner for intentional infliction of emotional distress and breach of statutory duty purportedly based on direct personal liability must fall with the other theories in the absence of any well

pleaded allegation of defendant's intent to injure the plaintiff and conduct on his part that went beyond the mere giving of legal advice however faulty that advice may have been.

Plaintiff's attempt to plead a cause of action against Lerner for inducing a breach of contract is barred as a matter of law. ■ Contrary to the argument advanced by plaintiff, absent extraordinary circumstances, an attorney may not be held liable for urging a client to breach a contract with some third party. (*Wolfrich Corp.* v. *United Services Automobile Assn.* (1983) 149 Cal.App.3d 1206 [197 Cal.Rptr. 446].) As we discuss in greater detail, *infra,* public policy dictates that attorneys must remain free to counsel their clients without fear of subjecting themselves to liability as a result of the proper discharge of their professional obligations. Clients as well must feel free to seek out an attorney's advice on *any* issue at *any* time. "Any rule to the contrary would constitute a serious impairment to the attorney-client relationship, and a resulting deleterious effect on the administration of justice. [Citation.]" (*Id.,* at p. 1211.)

■ We finally consider whether Lerner owed any duty of care to plaintiff in advising Bach whether he could execute and file the declaration Mickelson had requested for use in her lawsuit.[8] Arguing that an attorney owes a duty to exercise reasonable care in offering advice to a client that may adversely impact a foreseeable third party, plaintiff urges us to conclude that Lerner may be held liable for his alleged professional negligence.

An attorney generally will not be held liable to a third person not in privity of contract with him since he owes no duty to anyone other than his client. The question of whether an attorney may, under certain circumstances, owe a duty to some third party is essentially one of law and, as such, involves "a judicial weighing of the policy considerations for and against the imposition of liability under the circumstances. [Citation.]" (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 342 [134 Cal.Rptr. 375, 556 P.2d 737].)

■ "[T]he determination whether in a specific case the [attorney] will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the [attorney's] conduct and the injury,

---

[8] In his opening brief plaintiff also contends that Lerner acted negligently by unnecessarily reviewing Bach's confidential files and by attempting to "extort" the withdrawal of the administrative action against Bach by offering to provide damaging information against Mickelson. Our discussion, *infra,* relates to each of plaintiff's claims.

and the policy of preventing future harm. [Citation.]" (*Lucas* v. *Hamm* (1961) 56 Cal.2d 583, 588 [15 Cal.Rptr. 821, 364 P.2d 685]; see also *Biakanja* v. *Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358].)

The imposition of a duty of professional care toward third persons generally has been limited to those situations wherein the nonclient was an intended beneficiary of the attorney's services to the client, or where the foreseeability of harm to the nonclient as a consequence of professional negligence was not outweighed by other policy considerations. For example, negligence in the drafting of testamentary instruments establishes a cause of action in the testator's intended beneficiaries on the theory that "[w]hen an attorney undertakes to fulfill the testamentary instructions of his client, he realistically and in fact assumes a relationship not only with the client but also with the client's intended beneficiaries." (*Heyer* v. *Flaig* (1969) 70 Cal.2d 223, 228 [74 Cal.Rptr. 225, 449 P.2d 161]; *Lucas* v. *Hamm, supra,* 56 Cal.2d 583.) Similarly, an attorney representing a trustee also assumes a duty of care toward the beneficiaries. (*Morales* v. *Field DeGoff, Huppert & MacGowan* (1979) 99 Cal.App.3d 307, 316 [160 Cal.Rptr. 239]; *Bucquet* v. *Livingston* (1976) 57 Cal.App.3d 914, 921-922 [129 Cal.Rptr. 514].) Attorneys retained by their primary clients to represent third parties also owe a fiduciary duty to the third party they are hired to protect. (*Lysick* v. *Walcom* (1968) 258 Cal.App.2d 136 [65 Cal.Rptr. 406, 28 A.L.R.3d 368].)

It has been held, however, that an attorney has no duty to protect the interests of an adverse party (*Omega Video Inc.* v. *Superior Court* (1983) 146 Cal.App.3d 470, 480-481 [194 Cal.Rptr. 574]; *Norton* v. *Hines* (1975) 49 Cal.App.3d 917, 921 [123 Cal.Rptr. 237]) nor of a party with whom the client dealt at arm's length (*Goodman* v. *Kennedy, supra,* 18 Cal.3d 335, 344). Reasoning that the adverse party is not the intended beneficiary of an attorney's services, and that the attorney's undivided loyalty belongs to the client, these decisions also refuse to impose a duty where to do so would impermissibly intrude upon the attorney-client relationship. (*Ibid.*; *Mason* v. *Levy & Van Bourg* (1978) 77 Cal.App.3d 60, 66-67 [143 Cal.Rptr. 389].)

In our case, plaintiff attempts to analogize his situation to that of the intended beneficiaries in *Lucas* v. *Hamm, supra,* 56 Cal.2d 583, and the foreseeable third parties in *Donald* v. *Garry* (1971) 19 Cal.App.3d 769 [97 Cal.Rptr. 191, 45 A.L.R.3d 1177] and *Roberts* v. *Ball, etc., supra,* 57 Cal.App.3d 104. In *Donald,* an attorney, employed by a collection agency to bring an action for the collection of a debt owed to an individual, was held liable to the individual creditor when the collection proceeding was dismissed for lack of diligent prosecution by reason of the attorney's negligence. In *Roberts,* a law firm was held liable to a third party lender for negligent misrepresentation in furnishing a letter containing incorrect and

misleading data to his client, knowing that the letter would be shown to prospective lenders in order to obtain a loan.

Contrary to plaintiff's assertions, none of the above cited cases are on point. Although the complaint avers that Bach consulted Lerner in order to protect *plaintiff's* rights, the only reasonable inference to be drawn from the facts alleged is that Bach sought counsel to determine *his* legal and ethical position vis-à-vis both plaintiff and Mickelson. No manner of artful pleading can disguise the fact that plaintiff was a potential adverse party whose interests could not be represented by Bach's chosen counsel. The end and aim of Lerner's advice was not to bestow some tangible or intangible benefit on either plaintiff or Mickelson, but to protect his client from potential liability. That he may have acted negligently in doing so gives neither third party a cause of action against him.

While it is conceivable that Lerner may have foreseen the adverse consequences of his advice and its impact on plaintiff, that possibility alone provides insufficient justification for imposing liability. Whether a duty of care is owed to a foreseeable third party depends upon innumerable policy considerations. (See *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 740 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) As previously noted, *supra,* the courts of this state, in refusing to impose on an attorney a duty to an adverse third party, "have recognized that 'the burden of imposing liability upon a defendant' attorney outweighs 'the consequences to the community if liability . . . is withheld.' [Citation.]" (*Weaver* v. *Superior Court* (1979) 95 Cal.App.3d 166, 179 [156 Cal.Rptr. 745].)

The Supreme Court's observation in *Goodman* v. *Kennedy, supra,* 18 Cal.3d 335, is applicable here: "The attorney's preoccupation or concern with the possibility of claims based on mere negligence (as distinct from fraud or malice) by any with whom his client might deal 'would prevent him from devoting his entire energies to his client's interests' [citation]. The result would be both 'an undue burden on the profession' [citation] and a diminution in the quality of the legal services received by the client. [Citation; fn. omitted.]" (*Id.,* at p. 344.)

We see no benefit, and considerable risk, in imposing the broad duty plaintiff would have us establish here. The strong public policy in maintaining and strengthening the attorney-client relationship militates against the imposition of a duty flowing to a nonclient under the circumstances presented here. (See *St. Paul Title Co.* v. *Meier* (1986) 181 Cal.App.3d 948 [226 Cal.Rptr. 538]; *Fox* v. *Pollack* (1986) 181 Cal.App.3d 954 [226 Cal.Rptr. 532].)

Having concluded that the amended complaint fails to state any cause of action against Lerner, we need not determine the applicability of the judicial proceedings immunity of Civil Code section 47, subdivision 2.

 The trial court allowed plaintiff more than adequate opportunity to amend to conform with well-established rules of pleading. In light of the minor revisions efiectuated by plaintiff throughout, it was a proper exercise of discretion to call a halt to this futile exercise.

The judgment (order of dismissal) is affirmed.

Gates, J., and Fukuto, J., concurred.