Filed 2/10/16  Vannix v. Wachovia Mortgage CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LARRY VANNIX, as Executor, etc. | B246948 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC390613) |
| v. | |
| WACHOVIA MORTGAGE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory W. Alarcon, Judge.  Affirmed.

Law Offices of James P. Wohl and James P. Wohl for Plaintiff and Appellant.

Anglin Flewelling Rasmussen Campbell & Trytten and Robert A. Bailey for Defendant and Respondent.

————————————

## INTRODUCTION

Plaintiff Larry Vannix, as Executor of the Estate of Gloria Vannix-Serina, appeals from a summary judgment entered in favor of Defendant Wachovia Mortgage, a division of Wells Fargo Bank, N.A. (Wachovia). Plaintiff sued Wachovia, alleging Wachovia participated in a conspiracy with his late mother's loan broker to falsify loan documents and saddle his mother with a mortgage loan she could not afford. In granting summary judgment, the trial court found that Wachovia's evidence established it had no knowledge of the loan broker's alleged fraudulent scheme, and Plaintiff had failed to offer admissible evidence creating a triable issue on this essential element of a civil conspiracy. We affirm.

## FACTUAL BACKRGOUND[1]

On May 3, 2000, Gloria Vannix-Serina, a 72-year-old retired widow, met Defendant John Dwight at the home of her son, Plaintiff Larry Vannix.[2] At the time, Dwight was a mortgage loan broker and principal of Defendant Dwight Financial Corporation. Gloria's primary asset was her home, which she owned debt-free.

---

[1]     We draw the undisputed material facts from the parties' separate statements. (See *Roger H. Proulx & Co. v. Crest-Liners, Inc*. (2002) 98 Cal.App.4th 182, 197-198.) Where a genuine factual dispute exists, we state the evidence admitted by the trial court in the light most favorable to Plaintiff, as the nonmoving party, in accordance with the standard of review applicable to summary judgments. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) In view of Plaintiff's failure to include a copy of the third amended complaint in his appellant's appendix, we rely on the trial court's description of the operative pleading allegations, as set forth in the court's order granting Wachovia's summary judgment motion. (See fn. 8, *post*.)

[2]     For clarity, we refer to Plaintiff Larry Vannix as Plaintiff and refer to Gloria Vannix-Serina by her first name.

Dwight allegedly spoke with Gloria about taking a new mortgage on her home to fund an investment. He said he would introduce her to Ken and Tina Moseby (the Mosebys), who were " 'expert financial and investment advisors,' " with whom he shared an office. Dwight claimed the Mosebys " 'could put [Gloria] into an investment whereby "equity in her [home] would be used to generate risk-free income" ' " and that this income would be sufficient to " 'pay off [the] new debt on her [home].' "

During the meeting, Dwight asked Gloria to sign a blank form and told her he would fill in the required information. Plaintiff witnessed Gloria sign the form, but could not say whether it was a loan application or some other document. According to Plaintiff, after signing the form, Gloria provided Dwight with information concerning the equity in her home, the amount of her monthly social security income, her bank accounts, and a monthly payment she received from the sale of a previous home. Because he was present for only 80 percent of the conversation, Plaintiff did not know whether Gloria provided Dwight with any other information to complete the form. After the meeting, Dwight sent a completed loan application and other closing documents to Wachovia on Gloria's behalf.[3]

Wachovia's then-vice president, Randy Stager, received the loan application. Stager changed Gloria's application by handwriting "$4,500" into the "Other Income" description section, along with the description, "trust deed, retirement income, social security, [interest] income, which includes late husband's retirement & social security." (Capitalization omitted.) Stager testified that he likely received the information from Dwight, since he "typically did not talk to the borrower." He explained that if he needed clarification about income or expense figures stated in the application, his normal practice was to "ask the question to the mortgage broker and then place [the clarifying

---

[3]     To be clear, Dwight submitted the loan documents to World Savings Bank, FSB. In 2007, World Savings Bank, FSB changed its name to Wachovia Mortgage, FSB. And, in 2009, Wachovia Mortgage, FSB merged into and became a division of Wells Fargo Bank, N.A. For the sake of clarity, we refer to the company as Wachovia, regardless of the time period.

information] on the application."[4]  Stager also testified that he crossed out an amount stated as Gloria's monthly expense for "Rent," because he believed it was "obviously . . . entered erroneously into a wrong column."

At the end of May 2000, Gloria closed on a $168,750 loan with Wachovia, secured by a deed of trust on her home.  The loan documents disclosed that the loan had an adjustable rate with an initial one-month interest rate modification period.  Dwight allegedly obtained the loan proceeds from the escrow agent, Fidelity National Title Company (Fidelity), and forwarded the funds to the Mosebys, who placed the proceeds into "risky investments" with Pacific Life Insurance Company (Pacific).

Beginning in July 2000, Wachovia sent Gloria monthly loan statements.  Upon receiving her first statements, Gloria became concerned about the loan and attempted to obtain information from Dwight.  She indicated she did not understand why the loan balance had increased and she thought she would need more money from the investments.  Dwight did not answer or return her calls.

On October 31, 2003, Gloria filed a claim with the National Association of Securities Dealers against the Mosebys and Pacific.  The claim alleged that the Mosebys and Pacific " 'deviously conspired' " with Dwight to convince Gloria to take a mortgage on her home and invest the proceeds with them.  The parties settled the claim via mediation in July 2006.

## PROCEDURAL HISTORY

Gloria filed the initial complaint in this action on May 9, 2008.  Wachovia responded with a demurrer, asserting the statute of limitations as a complete defense.  The trial court sustained the demurrer without leave to amend.  This court reversed that judgment in a prior appeal, concluding the complaint alleged sufficient facts to toll the statute of limitations.  (*Vannix-Serena v. Pacific Life Insurance Co. et al.* (Aug. 19, 2010,

---

[4]  According to Stager, he only added a clarifying description to Gloria's application. As for the "$4,500" number that he wrote in the description section, Stager testified this was simply a carryover from a $4,500 figure that was already stated as "Other" monthly income in the application Dwight submitted to Wachovia.

4

B214458) [nonpub. opn.] [pp. 9-11].) This court also concluded the complaint's allegations were sufficient to allow the claims against Wachovia to proceed on the theory that Wachovia participated in a conspiracy with Dwight to defraud Gloria and commit other alleged civil violations. (*Id.* [at pp. 15-18, 20].)

On January 21, 2010, while the prior appeal was pending, Gloria passed away. Following remand, the parties stipulated to Larry Vannix, as executor of Gloria's estate, substituting as Plaintiff in this action.

Plaintiff subsequently filed the operative third amended complaint. The complaint alleges Wachovia, acting through Stager, conspired with Dwight, the Mosebys, Debra Jorns from Fidelity and other unidentified individuals at Pacific, to defraud Gloria by convincing her to obtain a loan from Wachovia " 'that she could not pay back, and then diverting the loan proceeds to risky investments with Pacific.' " The claims against Wachovia for constructive fraud, violation of the Unfair Competition Law, elder abuse, wrongful death, and money had and received are all predicated on the alleged civil conspiracy with Dwight.

Wachovia moved for summary judgment on the ground that Plaintiff could not prove Wachovia conspired with Dwight to commit any unlawful act.[5] To meet its initial burden, Wachovia offered declarations from Stager, the Mosebys and Jorns, all of whom testified they had no actual knowledge of any planned wrongful conduct, nor any association with an agreement to further any wrongful act. For his part, Stager also testified that he never consented to Dwight submitting a loan application for Gloria containing false information, and that he would not have processed Gloria's loan application if he knew it contained false information.

---

[5] Wachovia also argued the entire action was barred by the statute of limitations because Gloria knew or should have known she should confirm the validity of the information contained in her loan application as early as July 2000 when she began receiving monthly loan statements.

In his opposition, Plaintiff sought to create a triable issue on the conspiracy charge by citing a 2004 deposition that Dwight gave in a purported elder fraud case filed by an unrelated plaintiff. Plaintiff maintained that Dwight's testimony in the 2004 action showed that Stager provided Dwight with instructions related to Wachovia's loan approval guidelines in order to facilitate Dwight's alleged falsification of the loan application in that case. This testimony, Plaintiff argued, was sufficient to create a triable issue as to whether Wachovia, acting through Stager, conspired with Dwight to defraud Gloria.[6]

The trial court granted Wachovia's motion for summary judgment.[7] The court ruled that Dwight's 2004 deposition testimony in "another case involving different borrowers" was inadmissible to establish a conspiracy in the instant case, and that Plaintiff had offered "no admissible evidence to support his conspiracy claim." At the hearing on the motion, Plaintiff conceded the 2004 deposition testimony was inadmissible, but argued Stager's admission that he "changed the information" on

---

[6]    With regard to the statute of limitations, Plaintiff argued this court's opinion in the earlier appeal mandated that the trial court reject Wachovia's defense under the law of the case doctrine.

[7]    The order states that Wachovia's motion is "granted in part and denied in part." This wording appears to stem from the fact that the trial court rejected Wachovia's contention that the action was barred by the statute of limitations, while accepting the alternative argument that Plaintiff had no evidence to hold Wachovia liable as part of the alleged conspiracy with Dwight. For purposes of reviewing the judgment, the order is properly regarded as simply granting the motion. Wachovia obtained the relief it sought, even if the court rejected one of the grounds Wachovia asserted for summary judgment. Thus, because Wachovia is not an aggrieved party, it has no standing to pursue its purported cross-appeal, and we must dismiss the cross-appeal on this basis. (See Code Civ. Proc., § 902.) Of course, dismissing the cross-appeal does not preclude this court from addressing Wachovia's statute of limitations defense to affirm the judgment. However, we need not reach the issue, as we agree with the trial court's ruling on the conspiracy claim and affirm the judgment on this basis.

Wachovia also filed a motion to strike Plaintiff's supplemental reply brief concerning the cross-appeal. As we have dismissed the cross-appeal, we will deny Wachovia's motion to strike as moot.

6

Gloria's application was sufficient to create an inference that he had conspired with Dwight. The trial court rejected the argument. The court found Stager's testimony was not evidence of an agreement with Dwight to commit a civil wrong. Rather, in the court's assessment, the testimony showed Plaintiff's claims were based on "nothing more than a suspicion" of wrongdoing—not evidence of a conspiracy.

## DISCUSSION

1.     *Standard of Review*

" 'A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail.' [Citation.] The pleadings define the issues to be considered on a motion for summary judgment. [Citation.] As to each claim as framed by the complaint, the defendant must present facts to negate an essential element or to establish a defense." (*Ferrari v. Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 252.) If the defendant makes the requisite prima facie showing, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of material fact. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064–1065.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar, supra,* 25 Cal.4th at p. 850.)

We review orders granting or denying a summary judgment motion de novo. (*FSR Brokerage, Inc. v. Superior Court* (1995) 35 Cal.App.4th 69, 72; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 579.) We make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222.)

7

2.	*Plaintiff Failed to Offer Admissible Evidence of a Conspiracy Between Dwight and Wachovia*

Plaintiff does not dispute that every claim against Wachovia is predicated on the bank's alleged conspiracy with Dwight to commit the civil violations asserted in his complaint.  Thus, in assessing the parties' relative burdens on summary judgment, the trial court correctly focused on the elements necessary to establish a civil conspiracy, and whether the evidence, when viewed in the light most favorable to Plaintiff as the nonmoving party, admitted of a triable issue on each element challenged by Wachovia's motion.[8]

The " 'basis of a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act.' " (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1582 (*Kidron*).)  A civil conspiracy is not an independent tort.  (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd*. (1994) 7 Cal.4th 503, 510-511.)  Rather, it is a "legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.  [Citation.]" (*Ibid*.)

To prove the existence of a civil conspiracy, a plaintiff must offer admissible evidence of three elements: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." (*Kidron, supra,* 40 Cal.App.4th at p. 1581.)  Our focus, like the trial court's, will be on the first element—formation.

---

[8]	Our first step in reviewing a summary judgment is typically to " 'identify the issues raised by the pleadings, since it is these allegations to which the motion must respond.' " (*Waschek v. Department of Motor Vehicles* (1997) 59 Cal.App.4th 640, 644.)  In the instant appeal, Plaintiff failed to include a copy of the operative third amended complaint in his appellant's appendix, which, as Wachovia is right to point out, renders this first step impossible.  Be that as it may, in view of Plaintiff's concession, the omission is immaterial, since the absence of the pleading simply means that we presume the trial court correctly ascertained the operative complaint's theory of liability against Wachovia.  (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  The omission does not preclude our substantive review of the judgment.

The formation element requires proof that the conspiring defendants "have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose." (*Kidron, supra,* 40 Cal.App.4th at p. 1582; *Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 784-786.) Without proof that a defendant had knowledge of the unlawful purpose, " 'there is no basis for inferring an agreement.' " (*Kidron,* at p. 1582)

Further, while actual knowledge of the planned tort is necessary to establish formation, evidence of knowledge alone is insufficient to impose conspiracy liability on an individual defendant. (*Kidron, supra,* 40 Cal.App.4th at p. 1582.) To hold a defendant liable for an alleged co-conspirator's misconduct, a plaintiff must prove the defendant had knowledge of the planned tort "combined with intent to aid in its commission." (*Ibid.*) "The sine qua non of a conspiratorial agreement is the knowledge on the part of the alleged conspirators of its unlawful objective and their intent to aid in achieving that objective." (*Schick v. Lerner* (1987) 193 Cal.App.3d 1321, 1328.) "Mere knowledge, acquiescence, or approval of an act, without cooperation or agreement to cooperate is insufficient to establish liability." (*Michael R. v. Jeffrey B*. (1984) 158 Cal.App.3d 1059, 1069.)

Lastly, "[w]hile knowledge and intent 'may be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances' [citation], ' "[c]onspiracies cannot be established by suspicions. . . ." ' " (*Kidron, supra,* 40 Cal.App.4th at p. 1582.) More to the point, a suspicion based on " '[m]ere association' " does not establish a conspiracy. (*Davis v. Superior Court* (1959) 175 Cal.App.2d 8, 23 (*Davis*).) Rather, where a plaintiff seeks to rely on inferences to impose conspiracy liability, such inferences must flow from facts established in the action, and those facts must be established by " 'evidence of some participation or interest in the commission of the offense.' " (*Ibid.*)

9

In the instant case, Wachovia met its initial summary judgment burden with a declaration by Stager, in which Stager disclaimed any actual knowledge of Dwight's alleged plan to defraud Gloria. In opposing the motion, Plaintiff sought to introduce Dwight's deposition testimony from an unrelated case in 2004 to create a triable issue concerning Stager's supposed knowledge of Dwight's current scheme. The trial court ruled the deposition testimony was inadmissible to establish that Stager or Wachovia had knowledge of Dwight's alleged unlawful purpose, thereby rejecting Plaintiff's principal basis for opposing summary judgment. Plaintiff does not challenge the court's evidentiary ruling on appeal.

Instead, Plaintiff argues, as he did at the summary judgment hearing, that there is sufficient circumstantial evidence to create an inference that Stager knew of and agreed to assist Dwight in committing the alleged fraud. In that regard, Plaintiff relies exclusively upon Stager's deposition testimony, wherein Stager acknowledged that he added information to Gloria's loan application based upon a conversation he had with Dwight, without confirming the information with Gloria.[9] Like the trial court, we find this testimony allows nothing more than a suspicion based on the mere association between Stager and Dwight. Far from supporting a reasonable inference that Stager knew of Dwight's alleged unlawful purpose, Stager's testimony suggests only that he wanted more information about the source of the $4,500 income figure, and he consulted Dwight for this information because his normal practice was to seek clarification from

---

[9] Plaintiff actually contends that Stager "admitted to inserting the amount of $4,500 in unsubstantiated monthly income upon the Gloria Vannix-Serina loan application based upon his conversations with Dwight." Even viewing the evidence in the light most favorable to Plaintiff as the nonmoving party, we cannot draw that inference from Stager's deposition testimony or the subject loan application. On the contrary, Stager's testimony establishes that the loan application he received from Dwight already stated that Gloria received $4,500 in "Other" monthly income. Stager admitted only that he copied the $4,500 figure to a description section for "Other Income" and added the description "trust deed, retirement income, social security, [interest] income, which includes late husband's retirement & social security." (Capitalization omitted.) Reasonably construed, Stager's testimony does not support an inference that he knew the $4,500 figure was fabricated.

the loan broker who submitted the application. As for not contacting Gloria, Stager explained that he "typically did not talk to the borrower" to confirm information provided by the loan broker. Whatever suspicion this testimony might have engendered about Stager's conduct, it certainly is not the type of evidence that will support a reasonable inference that Stager had actual knowledge combined with an intent to aid Dwight in his alleged unlawful purpose. (See *Kidron, supra,* 40 Cal.App.4th at p. 1582; *Davis, supra,* 175 Cal.App.2d at p. 23.) The trial court properly granted Wachovia summary judgment.[10]

---

[10] Plaintiff's other claims of error have no merit. With respect to the law of the case doctrine, this court's prior opinion addressed the *allegations* necessary to state a claim based on civil conspiracy liability. In opposing summary judgment, Plaintiff was obligated to produce *evidence* to support those allegations. Because the trial court's ruling was based on Plaintiff's failure to produce such evidence, the ruling did not run afoul of the law of the case doctrine.

Plaintiff's contention that Wachovia or its successor by merger, Wells Fargo, lacked standing to obtain judgment is similarly misguided. Typically questions of standing concern the justiciability of a *plaintiff's* claim—not a defendant's right to defend an action in which it has been sued. Though Plaintiff failed to supply a copy of his operative complaint from which to determine what entity he named as a defendant, it appears from Wachovia's answer that it has defended this action as "WACHOVIA MORTGAGE (formerly known as World Savings Bank, FSB, now a division of Wells Fargo Bank, N.A.), erroneously sued as Wachovia Bank." To the extent Plaintiff named this entity as a defendant, clearly that entity had standing to obtain a judgment of dismissal.

## DISPOSITION

The summary judgment is affirmed.  Wachovia Mortgage is entitled to its costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

JONES, J.[*]

We concur:

EDMON, P. J.

ALDRICH, J.

_____

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.