Filed 7/29/16  Tran v. Hamilton CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| HOAN TRAN et al., | |
| Cross-complainants and Respondents, | G051014 |
| v. | (Super. Ct. No. 30-2013-00666746) |
| JOHN M. HAMILTON, | O P I N I O N |
| Cross-defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Kirk H. Nakamura, Judge.  Reversed.

Mazur & Mazur and Janice R. Mazur for Cross-defendant and Appellant.

No appearance for Cross-complainants and Respondents.

\*          \*          \*

Civil Code section 1714.10 (§ 1714.10) requires a party to obtain court approval before filing any cause of action against an attorney which is based on an alleged civil conspiracy between the attorney and his or her client, arising out of a claim or dispute. The statute authorizes an attorney to enforce the prefiling requirement by way of demurrer (among other options) and specifies that the trial court's ruling on such a demurrer will qualify as an appealable judgment.

In this case, appellant John M. Hamilton, the attorney for plaintiff Trinh Thi To Ly, demurred to the cross-complaint filed by defendant Hoan Tran, arguing Tran ran afoul of section 1714.10 when he named Hamilton as a cross-defendant on causes of action alleging he had conspired with Ly to thwart Tran's sale of a business entity that is both a named defendant in Ly's main complaint and a prime subject of its allegations. Although the trial court overruled Hamilton's demurrer on this ground, we conclude the court erred and reverse the judgment.

I

FACTS

Hamilton, acting as attorney for Ly, filed the main complaint in August 2013. The complaint asserts various causes of action against Tran, Harbor Automotive, Inc. (Harbor), and others, arising out of two failed agreements. The first was an alleged agreement by which Ly would invest $1,000,000 in Harbor, with the expectation of thereby qualifying for an EB 5 immigration visa. According to the complaint, the parties' agreement specified that if the visa application was denied, Ly's money would be returned to her. However, when Ly's visa application was denied, Tran allegedly refused to refund her investment.

The second agreement was an alleged partnership through which Ly and Tran would purchase and quickly rehabilitate single family homes with the goal of reselling them for a profit. Ly alleges she invested significant sums in the partnership, while Tran invested no money of his own. She further alleges that while five properties

2

were purchased and resold by the partnership, Tran wrongfully diverted at least a portion of the profits and other partnership funds for his own use.

Tran filed his cross-complaint in May 2014, naming not only Ly, but also Hamilton, as cross-defendants. Hamilton is identified in the cross-complaint as "an individual . . . who was, and still is, an attorney at law duly licensed by the State of California and doing business under the name of Hamilton Law Offices. At times herein mentioned, *Hamilton was acting as agent, representative and counsel for Ly, was acting in concert and agreement with Ly, was acting at the direction of Ly and was acting with the consent, permission and knowledge of Ly as to all agreements, contracts, leases, transactions and occurrences alleged and described herein*." (Italics added.) The cross-complaint further alleges that all cross-defendants, "at all times herein mentioned, . . . *were acting within the course and s[cope] of their* agency, employment, partnership, *conspiracy*, ownership or joint venture and with the knowledge, consent, acquiescence and permission of their respective principal, employer, partner, *co-conspirator* and joint venturer." (Italics added.) At no point does the cross-complaint allege Hamilton had any role in the events alleged therein, other than in his capacity as Ly's attorney and coconspirator. Nor does the cross-complaint allege Hamilton had any financial stake in the properties or transactions at issue in either the complaint or cross-complaint.

While the cross-complaint's first cause of action does include allegations against Hamilton, it is stated against Ly only, for breach of an agreement she entered into with Tran and Harbor, to lease Harbor the premises used to conduct its auto body repair business. It alleges that in May 2013, "Tran and Harbor informed Ly and Hamilton" of a third party's offer to purchase Harbor, which was contingent on an assignment of Harbor's lease to the purchaser, and that "Ly and Hamilton failed and refused to respond to notice of this proposed purchase and sale of Harbor, failed and refused to respond to cross-complainants' request for consent to assign the lease, delayed in the granting of an assignment of the lease and failed and refused to reasonably give consent to an

3

assignment of the lease." The cross-complaint alleges the same thing happened again in June 2013, when new proposed purchasers offered to buy Harbor. Again, "Ly and Hamilton" allegedly failed and refused to respond or cooperate in the effort to assign Harbor's lease to the proposed purchasers of the business.

The cross-complaint's breach of contract cause of action then specifically links the refusal to cooperate in the lease assignment with the filing of the main complaint, alleging that "[t]hereafter, on August 5, 2013, Ly, with Hamilton as her attorney of record, filed the within action [i.e., the main complaint] against Tran and Harbor alleging breach of contract, fraud, common counts and punitive damages. [¶] . . . Cross-complainants are informed and believe, and thereon allege, that *at the time of the offers to purchase Harbor, as described herein, Ly and Hamilton knew that they would be filing a lawsuit against Tran and Harbor and that Ly, by and through Hamilton, intentionally, willfully and purposefully delayed and withheld giving consent to assignment of the lease to the prospective purchasers, as described herein*." (Italics added.)

The cross-complaint's second cause of action alleges fraud in connection with Ly's purchase of the real property on which Harbor conducts its business and in the formation of Tran's and Ly's partnership to purchase and rehabilitate residential properties. Hamilton is not mentioned in this cause of action.

It is the third through sixth causes of action that name Hamilton as a cross-defendant, alleging he is liable to Tran for (1) intentional interference with contractual relations, (2) negligent interference with contractual relations, (3) intentional interference with prospective economic advantage, and (4) negligent interference with prospective economic advantage. All of those causes of action allege that the contracts or prospective economic relationships interfered with were Tran's agreements (or proposed agreements) to sell Harbor to the interested third parties, and all allege that cross-defendants interfered with those agreements by intentionally or unreasonably delaying consent to the lease

4

assignment. Moreover, the fifth and sixth causes of action, alleging intentional and negligent interference with prospective economic advantage, also allege that cross-defendants communicated with the prospective purchasers, making "false, untrue and derogatory statements concerning Tran and Harbor," which either intentionally or negligently harmed Tran and Harbor, and caused the third parties to withdraw their offers to purchase Harbor.

Finally, all of these causes of action allege that Ly and Hamilton engaged in the described interference in contemplation of Ly's lawsuit against Tran. For example, the third and fifth causes of action allege "cross-defendants intentional acts were designed to interfere with, eliminate, destroy and get rid of those contractual relationships so that Harbor would not be sold and *to ensure [Tran] and Harbor would continue to operate the business*, continue to pay Ly the monthly lease amount, *continue to possess active financial pockets from which Ly could look for payment of alleged damages asserted in her lawsuit* and for purposes of ill will and harassment. Ly and Hamilton engaged in this strategy and scheme in that *at the time of the contractual relationships, as described herein, said cross-defendants knew that they were filing a lawsuit against Tran and Harbor*." (Italics added.) Further, Ly and Hamilton's "delay in acting on the offers to purchase Harbor and the unreasonable failure and refusal to consent to the assignment of the Lease . . . *was designed to accommodate the prospective lawsuit which said cross-defendants intended to file against cross-complainants*, and was a despicable act done in willful and conscious disregard of the rights of cross-complainants." (Italics added.)

The fourth and sixth causes of action, based on a theory of negligent, rather than intentional interference, nonetheless connect cross-defendants' unreasonable delay and failure to consent to Ly's planned lawsuit, stating their delay "had the effect of" getting rid of Harbor's prospective buyers, thereby "ensuring that [Tran] and Harbor would continue to operate the business . . . and continue to possess active financial pockets from which Ly could look for payment of alleged damages asserted in her

5

lawsuit.  At the time of the contractual relationships, as described herein, said cross-defendants knew that they were filing a lawsuit against Tran and Harbor."

Hamilton demurred to Tran's cross-complaint, arguing that none of the causes of action alleged against him was sufficient to state a cause of action, and that all required prefiling approval under section 1714.10.  The trial court sustained the demurrer as to the fourth cause of action, without leave to amend, solely on the basis there was no cause of action for negligent interference with contract under California law, and citing *Davis v. Nadrich* (2009) 174 Cal.App.4th 1, 9-10.[1]  However, the court otherwise overruled Hamilton's demurrer.

II

DISCUSSION

1.  *Applicable Law*

Section 1714.10, subdivision (a), states:  "No cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civil conspiracy to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action."

---

[1]  As explained in *Davis*, this rule represents something of an anomaly.  Our Supreme Court rejected a cause of action for *negligent*, as opposed to *intentional*, interference with contract in *Fifield Manor v. Finston* (1960) 54 Cal.2d 632.  However, the Supreme Court subsequently recognized a cause of action for negligent interference with prospective economic advantage in *J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799.  And while some have questioned the continuing validity of *Fifield* in the wake of *J'Aire*, "the Supreme Court has yet to disapprove [*Fifield*]."  *(LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 349.)

"Section 1714.10 was intended to weed out the harassing claim of conspiracy that is so lacking in reasonable foundation as to verge on the frivolous. [Citations.]  The weeding tool is the requirement of prefiling approval by the court, which must be presented with a verified petition accompanied by a copy of the proposed pleading and 'supporting affidavits stating the facts upon which the liability is based'; the pleading is not to be filed until the court has determined '. . . the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action.'" (*Evans v. Pillsbury, Madison & Sutro* (1998) 65 Cal.App.4th 599, 604.)

As explained by our Supreme Court in *Doctor's Co v. Superior Court* (1989) 49 Cal.3d 39, 47, an attorney can only be held liable based upon a conspiracy with his or her client in two situations:  first, when the attorney "conspir[es] with his or her client to cause injury by violating *the attorney's own duty to the plaintiff*," and second, when the attorney engages in a conspiracy "'for their individual advantage' and not solely on behalf of the [client]."  Thus, section 1714.10's, subdivision (c), prefiling requirement exempts "a cause of action against an attorney for a civil conspiracy with his or her client, where (1) the attorney has an independent legal duty to the plaintiff, or (2) the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain."

The pleader's failure to comply with section 1714.10's, subdivision (b), requirement for a prefiling court order is a defense to the complaint which can "be raised by the attorney charged with civil conspiracy upon that attorney's first appearance by demurrer, motion to strike, or such other motion or application as may be appropriate."

And finally, section 1714.10, subdivision (d), "establishes a special proceeding of a civil nature."  Thus, any order made pursuant to its provisions, "which determines the rights of a petitioner or an attorney against whom a pleading has been or is proposed to be filed, shall be appealable as a final judgment in a civil action."  (*Ibid.*)

7

And "[s]ince the section 1714.10 special proceeding procedure operates like a demurrer or motion for summary judgment in reverse [citation], and since it involves only questions of law, it follows that our review of the order under that section is de novo." (*Berg & Berg Enterprises, LLC  v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, 822.)

*2.  The Causes of Action Alleged Against Hamilton are Subject to Section 1714.10*

Hamilton's primary contention on appeal is that the trial court erred by not sustaining his demurrer on the basis of section 1714.10.  We agree.

A cause of action that requires prefiling authorization under section 1714.10, subdivision (a), is one that it is based on the attorney's "civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute." Of course, a bare "conspiracy" is nothing more than an agreement, and thus a "civil conspiracy" in and of itself, does not state a cause of action.  "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration."  (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510-511.)  "A civil conspiracy however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage." (*Unruh v. Truck Insurance Exchange* (1972) 7 Cal.3d 616, 631, superseded by statute on another point as stated in *Hendy v. Losse* (1991) 54 Cal.3d 723, 732, fn. 6.)  Rather, "'[t]he effect of charging . . . conspiratorial conduct is to implicate all . . . who agree to the plan to commit the wrong as well as those who actually carry it out.'"  (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 784.)

Hence, a "cause of action against an attorney for a civil conspiracy with his or her client" as referenced in section 1714.10, subdivision (a), would be any cause of action alleging an attorney conspired with his or her client in the commission of a tort

8

that resulted in the pleader's damage. And that description encompasses all four of the causes of action alleged against Hamilton in this case. Further, Tran's cross-complaint explicitly alleges that Hamilton and his client, Ly, engaged in their conspiracy in anticipation of filing Ly's main complaint against Tran, and with the intention (or at least the understanding) that thwarting Tran's effort to sell Harbor would advantage Ly's interests in that litigation. Thus, there can be no dispute that their alleged conspiracy arose from their attempt to "contest" Ly's "claim." *(Ibid.)* Consequently, each of the causes of action alleged against Hamilton falls within the parameters of section 1714.10.

And nothing in Tran's cross-complaint would bring these causes of action within the exceptions set forth in subdivision (c) of section 1714.10. Nowhere does Tran allege that Hamilton had any individual financial interest in the transactions at issue in the cross-complaint, and he does not allege Hamilton owed – let alone violated – any independent legal duty to him. Indeed, the primary wrong alleged is that Ly and Hamilton unreasonably delayed approving the transfer of Harbor's lease to prospective purchasers. While that might qualify as a breach of Ly's contractual duty under the lease, it suggests no breach of duty by Hamilton, who is not a party to that lease. (*Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 576 [agent cannot be held liable for inducing principal's breach of contract]; see *Schick v. Lerner* (1987) 193 Cal.App.3d 1321, 1329 ["absent extraordinary circumstances, an attorney may not be held liable for urging a client to breach a contract with some third party"].)

The only other misconduct alleged is that Ly and Hamilton purportedly made "false, untrue and derogatory statements concerning Tran and Harbor" to the prospective purchasers. However, there is no legal duty to refrain from making false or derogatory statements in the abstract, and the cross-complaint includes no allegation that Hamilton made such statements with knowledge of their falsity, as might suggest defamation, or with the intent to induce reliance, as might suggest intentional fraud.

9

Instead, the causes of action stated against Hamilton in Tran's cross-complaint appear to allege just the sort of garden variety attorney-client claim of "conspiracy" that section 1714.10 is intended to prevent. The cross-complaint does not suggest Hamilton engaged in any conduct beyond that which would be expected of an attorney who is advising a client in the midst of a dispute, and who is advocating in favor of that client's interests. As pointed out in *Schick v. Lerner*, *supra*, 193 Cal.App.3d at page 1329, "public policy dictates that attorneys must remain free to counsel their clients without fear of subjecting themselves to liability as a result of the proper discharge of their professional obligations." And Hamilton owes no duty to Tran, his client's opponent, to avoid inflicting harm upon him in the course of representing her. (*Omega Video Inc. v. Superior Court* (1983) 146 Cal.App.3d 470, 480–481.)

Based on the foregoing, we conclude the trial court erred by failing to sustain Hamilton's demurrer to each and every cause of action alleged against him in Tran's cross-complaint, on the ground Tran failed to obtain a prefiling order pursuant to section 1714.10.

*3. Other Arguments*

Hamilton also contends the trial court erred by overruling his demurrer to the third, fifth and sixth causes of action on ground that none states a cause of action against him. However, it is only the court's ruling under section 1714.10 that qualifies as an appealable judgment. The balance of the court's order falls under the ordinary rule that "[a]n order overruling a demurrer is not directly appealable, but may be reviewed on appeal from the final judgment." (*Cryolife, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1145, 1151.) We consequently do not address those arguments here.

10

III

DISPOSITION

The judgment is reversed.  Hamilton is entitled to his costs on appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.